**UNITED STATES of America**

v.

**Craig WATSON.**

**Crim. No. 92–00672–01.**

United States District Court,
E.D. Pennsylvania.

March 8, 1993.

J. Matthew Wolfe, Philadelphia, PA, for Watson.

Robert Reed, U.S. Atty's Office, Philadelphia, PA, for U.S.

## MEMORANDUM

ROBRENO, District Judge.

This case involves a prosecution under the recently enacted federal anti-carjacking statute. The defendant has moved to dismiss the indictment on the grounds that the statute is unconstitutional and that the indictment is vague. For the reasons stated below, the motion will be denied and the case shall proceed to trial as scheduled.

## I. BACKGROUND

On December 1, 1992 a grand jury indicted the defendant on one count of conspiracy to commit armed carjacking (18 U.S.C. § 371 and § 2119), one count of armed carjacking (18 U.S.C. § 2119), one count of carrying a firearm during and in relation to a violent crime (18 U.S.C. § 924(c)), and three counts of obstruction of justice (18 U.S.C. § 1512(b)(1)). The indictment alleges that defendant and an accomplice stole an automobile at gunpoint from the male owner of the vehicle and his female associate, and that the defendant subsequently, on three separate occasions, attempted to influence a grand jury witness.

Defendant has moved to dismiss Counts 1 and 2 of the indictment on the ground that 18 U.S.C. § 2119 is unconstitutional. Section 2119 outlaws armed car theft, commonly referred to as "carjacking."[1] Section 2119 be-

---

1. Section 2119 reads as follows:  "2119. Motor Vehicles

came effective on October 25, 1992, two days before the alleged theft of the car now at issue. Defendant contends that the statute: 1) is an invalid exercise of Congress' powers under the Commerce Clause of the United States Constitution, 2) violates principles of equal protection, and 3) is unconstitutionally vague. Defendant also argues that the indictment itself is vague. The Court will address these arguments *seriatim.*

## II. DISCUSSION

### a. *The Commerce Clause*

The federal government may act only pursuant to a power granted to it by the United States Constitution. *McCulloch v. Maryland,* 17 U.S. (4 Wheat) 316, 405, 4 L.Ed. 579 (1819). Among the powers specifically enumerated in the Constitution is the power of the federal government to regulate interstate commerce. This power is set forth in the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3.[2] It is now said that "[t]he Commerce Clause forms the broadest base of Congressional power," *Nevada v. Skinner,* 884 F.2d 445 (9th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990), providing only a "nominal check" on the federal power to regulate. *In re TMI Litigation Cases Consol. II,* 940 F.2d 832, 876 (3d Cir.1991) (Scirica, J., concurring), *cert. denied sub nom.,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).

The modern test for the validity of the congressional exercise of Commerce Clause powers was stated in *Hodel v. Indiana,* 452 U.S. 314, 325, 101 S.Ct. 2376, 2383–84, 69 L.Ed.2d 40 (1981): "A court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends." The exercise of Commerce Clause power will support the enactment of federal criminal statutes in at least three contexts: *One,* where the regulation relates to things "in commerce," be it misuse of the channels of interstate commerce, *e.g., Brooks v. United States,* 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699 (1925) (rejecting Commerce Clause challenge to the Dyer Act, 18 U.S.C. § 2312, which outlaws the interstate transportation of stolen vehicles); *Hoke v. United States,* 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913) (rejecting Commerce Clause challenge to the Mann Act, 18 U.S.C. § 2421, which outlaws the interstate transportation of persons for purposes of prostitution); *Gooch v. United States,* 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522 (1936) (rejecting Commerce Clause challenge to the "Lindberg Law," 18 U.S.C. § 1201, which outlaws kidnappings that are related to interstate transportation or commerce), *or* legitimate use of the channels of interstate commerce,[3] *e.g., United States v. Darby,* 312 U.S.

"Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
   "(1) be fined under this title or imprisoned not more than 15 years, or both,
   "(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
   "(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both."
Section 2119 was enacted pursuant to § 101(a) of the Anti Car Theft Act of 1992, 102 P.L. 519, 106 Stat. 3384 (1992). The Anti Car Theft Act is a far reaching attempt by Congress to address many aspects of car theft on the federal level. The prohibition of carjacking imposed by § 2119

is but one facet of this attempt, and is the only one at issue in this case. Nothing in this Memorandum should be construed as a comment on the constitutionality of any provision of the Act other than § 2119.

**2.** "The Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

**3.** The Supreme Court in *Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), a case involving the exercise of federal power over activities occurring solely *intrastate* (loan sharking), described generally three areas in which Congress has exercised power under the Commerce Clause. Perez defines the first category as being "use of channels of interstate or foreign commerce which Congress deems are being misused." *Id.,* 402 U.S. at 150, 91 S.Ct. at 1359. It appears that another "channels" category exists for regulations over products that

100, 61 S.Ct. 451, 85 L.Ed. 609 (1941) (rejecting Commerce Clause challenge to statute prohibiting employers from paying wages below a certain rate if the employees manufacture goods for interstate commerce); *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976) (federal statute prohibiting felon's possession of firearms transported in interstate commerce applies to situations in which the interstate transportation occurred before the felon's possession); *two*, where the targeted activity occurs solely intrastate but affects interstate commerce, *e.g.*, intrastate loan sharking (18 U.S.C. § 891, *et seq.*); [4] and *three*, where the regulation involves protection of the instrumentalities of interstate commerce themselves, *e.g.*, 18 U.S.C. § 32 (criminalizing the destruction of aircraft).[5]

■ Testing the anti-carjacking statute against the sweep of the Commerce Clause in these three categories, the Court has little difficulty rejecting defendant's contention. First, the statute applies only if the stolen car at issue is "transported, shipped or received" in interstate commerce prior to the theft.[6] Since the statute applies only to cars that have crossed state lines, it applies only to things which are said to be "in commerce." Regulation of things "in commerce" represents the earliest and most traditional congressional exercise of Commerce Clause powers. *See, e.g., Gibbons v. Ogden*, 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824) (Commerce Clause justifies regulation over licensing of ships); *Reid v. Colorado*, 187 U.S. 137, 23 S.Ct. 92, 47 L.Ed. 108 (1902) (upholding federal regulation over interstate transportation of diseased livestock); *McDermott v. Wisconsin*, 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754 (1913) (upholding federal regulation over labelling requirements for goods travelling through interstate commerce); *see also Darby*[7] and *Barrett, supra*, and Nowak, Rotunda, *Constitutional Law* (4th ed.), at 144 ("When persons or items traveled between two states, there could be no question that they constituted interstate commerce."). Given the Supreme Court's historic acceptance of the assertion of federal control over things that travel, or have travelled, in interstate commerce, the power of Congress to

---

were shipped through interstate channels, but did not involve misuse of the channel. Section 2119 is one such example. *Perez* itself did not claim that its list of categories was meant to be exclusive, in that the opinion states its three categories were areas that the Commerce Clause reaches "in the main." *Id.*

4. In *Perez*, despite the fact that defendant's loan sharking conduct took place solely within one state, the Supreme Court nonetheless found no Commerce Clause violation. In doing so, the Supreme Court noted that Congress, in expressed findings, had determined that organized crime affected interstate commerce because it was national in scope, and that loan sharking was one of the principle sources of income for organized crime. According to the Court, it followed, *a fortiori*, that loan sharking affected interstate commerce, and was thus subject to the federal regulatory power. *Perez*, 402 U.S. at 155, 91 S.Ct. at 1361. The *Perez* court's approval of the application of a federal statute to intrastate activity was not novel. The *Perez* Court itself cited to several prior Supreme Court cases in which the Court upheld civil and criminal regulations of intrastate activity that affected interstate commerce. *See, e.g., United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942) (upholding federal price regulation of intrastate sales of milk); *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (upholding regulation of wheat grown solely for home consumption); *United States v. Darby*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941) (upholding statute creating criminal prohibition of employment of workers who produced goods for interstate commerce at rates other than those prescribed by Congress); *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), and *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (upholding statutes requiring motels and restaurants to provide services without regard to race).

5. *See Perez*, 402 U.S. at 150, 91 S.Ct. at 1359.

6. This distinction forms the basis for defendant's equal protection argument, discussed *infra*.

7. *Darby* is perhaps the most historically relevant of the cases in this category. In *Darby*, the Court upheld federal regulation of wages for workers engaged in production of goods for interstate commerce on the simple ground that the statute did, in fact, regulate the types of goods shipped in interstate commerce. It was irrelevant to the Court that the statute's primary target appeared to be worker's wages, not interstate commerce. The Court stated that "motive and purpose of a regulation of interstate commerce are matters for the legislative judgment...." *Darby*, 312 U.S. at 115, 61 S.Ct. at 457.

regulate as it did in § 2119 cannot be seriously questioned.

Secondly, Congress perceived an impact on interstate commerce arising out of automobile theft. The House Judiciary Committee in its report found that car thieves profit through three different methods: 1) by dismantling stolen cars at "chop shops" in order to resell their parts, 2) by obtaining title in one state to cars stolen from another state, thereby taking advantage of the states' inability to swiftly communicate with each other with regard to stolen vehicles, and 3) by exporting stolen cars to foreign countries. H.R.Rep. No. 851, 102d Cong.2d Sess., pt. 1, at 14 (1992), U.S.Code Cong. & Admin. News 1992, pp. 2829, 2830. The report goes on to state that:

> Enterprises using all three profiteering methods regularly engage in interstate, and even international trafficking of automobiles and auto parts. Just as important, auto thieves have a severe and deleterious effect on interstate commerce by imposing significant costs on automobile owners. The most obvious cost is reflected in increasing [sic] high automobile insurance premiums.... In addition, car owners often must take expensive security measures—such as anti-theft devices and off-street parking—to protect their investment. These costs depress the interstate commerce in automobiles by making car ownership significantly more expensive for consumers.

*Id.* at 14–15, U.S.Code Cong. & Admin. News 1992, pp. 2830–2831. The report also states that:

> Automobile theft has become the nation's number one property crime problem. More than 1.6 million motor vehicles were reported stolen in 1991, an increase of 34% since 1986. The stolen automobiles were worth an estimated $8–9 billion, representing over 50% of the value of property lost to crime.

*Id.* at 14, U.S.Code Cong. & Admin. News 1992, p. 2830. The report also noted that "[a]uto crime enforcement has been conducted primarily at the state and local level.

There are significant barriers to enforcement, however, that have resulted in 49 out of 50 auto thieves escaping punishment." *Id.* at 15, U.S.Code Cong. & Admin. News 1992, p. 2831. Finally, Rep. Eleanor Holmes Norton (D–DC) stated during debates that:

> With good reason, [the Anti–Car Theft Act] makes armed carjacking a Federal offense.... These thefts often cross state lines, and, indeed, to do an effective job, law enforcement agencies have had to work regionally and nationally, rather than just locally. Our local police agencies are now working with FBI agents on a newly formed car-theft task force, and the U.S. attorney's office has created a regional computerized database of suspects and carjacked vehicles. Carjacking is a classic case for Federal intervention.

138 Cong.Rec. H11821–22 (daily ed. Oct. 5, 1992).

As these passages demonstrate, the enactment of § 2119 was at least partially the result of a congressional finding that the post-theft sale of cars and their parts makes auto thefts, including those in which cars are obtained through carjacking, a problem that affects interstate commerce. The House Report's statistics describing the escalation in car thievery well support this conclusion. *See* House Report, at 14, U.S.Code Cong. & Admin. News 1992, p. 2830.

The anti-carjacking statute passes constitutional muster under the Commerce Clause on yet a third basis. Cars are, in and of themselves, *instrumentalities* of interstate commerce that Congress has the power to protect. *Perez*, 402 U.S. at 150, 91 S.Ct. at 1359 (stating that the Commerce Clause reaches "protection of the instrumentalities of interstate commerce, as, for example destruction of an aircraft (18 U.S.C. § 32) ..."). Clearly, there is no reason to suggest that if the power of Congress can be applied to afford protection against destruction of aircraft, that power is not available to Congress to afford similar protection against theft of automobiles. *See Perez*, 402 U.S. at 150, 91 S.Ct. at 1359.[8]

For the foregoing reasons, the Court finds that § 2119 represents a valid exercise of

---

8. As noted above, the Commerce Clause also requires a "reasonable connection" between the means Congress chose to address the problem and their purported ends. *See Hodel, supra.*

federal legislative authority under the Commerce Clause.[9]

### b. *Equal Protection*

Defendant argues that § 2119 violates his right to equal protection because it prohibits only the armed theft of cars previously "transported, shipped or received" in interstate commerce (hereinafter "interstate cars"). Defendant contends that Congress' failure to also prohibit the armed theft of cars that "had never been in interstate commerce"[10] (hereinafter "intrastate cars") creates an unconstitutional classification.[11] In other words, under the defendant's argument, there was no rational basis for Congress to regulate the theft of cars that had been, for example, transported from Michigan to Pennsylvania, but not the theft of cars that were manufactured in Michigan but not subsequently transported from that state.[12]

The standards by which courts must evaluate equal protection claims are well estab-

---

Such a "reasonable connection" obviously exists with respect to § 2119. Congress perceived an impact on interstate commerce arising out of car thefts. Legislation that punishes car theft is unquestionably "reasonably connected" to that problem.

Defendant's motion also interposes the Tenth Amendment to the United States Constitution as a defense to prosecution. The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Defendant's argument is precluded by the Supreme Court's decision in *Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), where the Court held that the Tenth Amendment acts as a bar to the assertion of Commerce Clause powers only where the legislation at issue arose out of improprieties in the political process. No evidence of such impropriety exists in the case in the case at hand.

9. That challenges to the congressional power to enact criminal legislation pursuant to the Commerce Clause are generally viewed as unlikely to be met with much success may be exemplified by the offhand comment made by Justice Scalia during a recent appearance before the House Appropriations Committee to address the Supreme Court's budget proposals. The following is taken from a recent newspaper account of that event:

Rep. Jim Kolbe, Arizona republican, asked Justice Scalia whether there is a constitutional problem with Congress turning state offenses, such as carjacking, into federal crimes.

Justice Scalia said there is no constitutional problem as long as the crimes are related to interstate commerce, "which doesn't take much."

Nancy E. Roman, *The Washington Times*, February 18, 1993, at A8.

10. Defendant's discussion of this argument is far from expansive. That portion of defendant's brief that addresses equal protection states as follows:

The Defendant is being prosecuted pursuant to 18 U.S.C. § 2119. This statute is unconstitutional in that it denies the defendant equal protection under the law pursuant to Article XIV of the U.S. Constitution. Others alleged to have committed the same crime but dealing with an automobile which had never been in interstate commerce would not be charged with this crime. There is, in reality, no difference between the offenses. There is no real difference between a car which was interstate commerce [sic] and one which never was. There is no affect in commerce.

Memorandum of Law in Support of Defendant's Motion to Dismiss, at 1. Defendant's reference to "Article XIV" was almost certainly intended as a reference to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The reference is in error nonetheless, since equal protection rights with respect to federal statutes arise out of the Fifth Amendment, not the Fourteenth. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

11. Defendant has standing to assert his equal protection argument even though it appears as if Congress would include his alleged theft within the scope of any amended statute enacted for the purpose of remedying the statute's alleged inequality. *See Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Heckler v. Mathews*, 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984).

12. For purposes of addressing defendant's argument, the Court assumes that there is, in fact, such a thing as a motor vehicle that has *not* been "transported, shipped or received in interstate or foreign commerce." This assumption appears especially reasonable in light of the fact that § 2119 requires theft of a "motor vehicle" that has been subjected to interstate commerce. The statute's use of the term "motor vehicle" would appear to preclude the argument that any car whose *parts* were shipped in interstate commerce falls within the statute, since the shipment of a part is not the same as the shipment of a "motor vehicle." Further, acceptance of the "parts are cars" argument would effectively nullify the limitation set forth in the statute, in that it would appear reasonable to conclude that all cars being driven today contain parts that were manufactured in states other than the state in which they

lished, and were summarized recently by the Third Circuit as follows:

> As a general matter, economic and social legislation is subject to rational basis review, under which a law need only be "rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam). However, where such legislation establishes "a classification [that] trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage" *id.,* it must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest. *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

*Schumacher v. Nix,* 965 F.2d 1262, 1266 (3d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1252, 122 L.Ed.2d 651 (1993). No legitimate argument can be made that this case involves a suspect classification. Accordingly, defendant can only succeed in his equal protection claim if § 2119's interstate/intrastate distinction is not rationally related to a legitimate state interest.

There is little doubt that Congress' choice to exclude the theft of *intrastate* cars from the sweep of the statute was based on congressional concern that failure to do so would render the statute constitutionally flawed.[13] This conclusion is supported by the available legislative history.[14] H.R. 4542 was introduced in the House of Representatives on March 24, 1992. As set forth in the original version of the bill, § 2119 read as follows: "Whoever, by force and violence, or by intim-idation, takes a motor vehicle from the person or presence of another, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." *Anti–Car Theft Act of 1992: Hearings on H.R. 4542 Before the Subcommittee on Crime and Criminal Justice of the Committee on the Judiciary of the House of Representatives,* 102nd Cong., 1st and 2nd sess., 93 (March 31, 1992) ("March 31 Hearings"). Thus, the statute as originally drafted was intended to apply to the theft of *both* interstate and intrastate cars. Hearings on H.R. 4542 were held by the Subcommittee on Crime and Criminal Justice of the House Judiciary Committee on March 31, 1992. At those hearings, the Subcommittee heard testimony from John C. Keeney, Deputy Assistant Attorney General, Criminal Division, Department of Justice. In addition to his testimony, Mr. Keeney provided the Committee with a prepared written report. The report stated, in part, as follows:

> [§ 2119] makes no reference to a connection with interstate commerce or any other basis for federal jurisdiction. If enacted, the jurisdictional basis for this provision would be subject to serious challenge.

March 31 Hearings, at 143–44. Mr. Keeney later testified that "[i]f you decide to enact the legislation, the robbery provision, that there be questions raised as to its constitutionality unless the Congress does, as they did in the loan sharking bill, make congressional findings to the effect that there's an impact on interstate commerce, which can be done." *Id.* at 155. The version of the bill approved by the Subcommittee on May 21, 1992 incorporated the limitation relating to interstate cars that eventually became law.[15]

---

were manufactured. The Court will not construe the statute in a manner that nullifies one of its provisions.

**13.** The equal protection issue in this case might be easier to decide if the Court were able to determine that Congress intended to limit the scope of § 2119 to interstate cars in order to preserve prosecutorial and/or judicial resources, or perhaps out of policy (as opposed to constitutional) concerns over intruding into areas of state law enforcement. The legislative history, however, does not appear to support this conclusion. Further, without information as to how many cars are affected by the limitation, i.e. how many intrastate cars actually exist, the Court would not be able to determine whether such "policy" and/or "resources" arguments would be rational.

**14.** Transcripts of hearings held on September 10, 1992 by the Committee on Energy and Commerce Subcommittee on Commerce, Consumer Protection, and Competitiveness had not been made available by the United States Government Printing Office as of the date of this Memorandum.

**15.** The other significant difference between the original version of § 2119 and the version even-

Given the foregoing, the equal protection issues in this case can be stated as follows: 1) can concern over a potential constitutional infirmity provide the state with a legitimate interest in making a statutory classification? and 2) if so, was such concern rational in this case? The Court answers both questions affirmatively, and therefore rejects defendant's equal protection challenge.

■■■■ As to the first question, it is axiomatic that Congress need not legislate to the full extent of its constitutional authority whenever it enacts a statute. The Supreme Court addressed this principle in the context of Commerce Clause powers in *United States v. American Building Maintenance Indus.*, 422 U.S. 271, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975). In that case, the Court recognized that Congress can choose to regulate only activities deemed to be "in commerce," as opposed to "an assertion of its full Commerce Clause power so as to cover all activity substantially affecting interstate commerce." *American Building Maintenance*, 422 U.S. at 280, 95 S.Ct. at 2156 (citing to legislation acknowledging that use of the statutory term "in commerce" reflects an exercise of less power than that asserted in statutes using the term "affecting commerce"). Of course, to say that Congress may choose to exercise less than all of its Commerce Clause power is not to say that it may base its decision on illegitimate grounds. The question therefore remains whether a statutory classification based on a concern for the constitutional viability of a statute meets the legitimate state interest test.

The court concludes that it does. In fact, the answer appears nearly self-evident. Tailoring statutes so that they do not raise constitutional questions is at the very least a legitimate objective, and even perhaps almost always a desirable one. To hold otherwise would force Congress to push the ends of the constitutional envelope with every statute it enacts, thus rendering Congress powerless to predict confidently the validity of its own enactments.

The Supreme Court tacitly recognized this principle in the context of the Commerce Clause in *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). In *Scarborough*, the Supreme Court was presented with the construction of a federal statute that outlawed the receipt, possession, or transport in commerce or affecting commerce of any firearm by a convicted felon. In discussing the legislative history of the statute's requirement of a nexus to commerce, the Court observed: "Congress was not particularly concerned with the impact on commerce except as a means to insure the constitutionality of [the statute]." *Id.* at 575 n. 11, 97 S.Ct. at 1969 n. 11. In the present action, this Court is presented with legislative history similarly suggesting that Congress included the requirement that the stolen motor vehicle be transported, shipped, or received in interstate or foreign commerce in order to insure the statute's constitutionality. *Cf. Hennessey v. NCAA*, 564 F.2d 1136, 1144–45 (5th Cir.1977) (creating regulatory exception was "certainly a legitimate state objective" when failure to create exception would result in situation where "immediate compliance [with the regulation] would be impossible or impracticable ... particularly in view of the Constitutional mandate against any state law 'impairing the Obligation of Contracts' ").

Having determined that protecting the constitutionality of a statute by limiting its sweep is a legitimate state interest, I must next determine whether the classification (inter vs. intrastate commerce) is, in fact, rationally related to that interest. In its memorandum, the government notes that it is

tually enacted is the fact that the original version punished all violent car theft, while the enacted version punishes only those car thefts involving firearms. The incorporation of the firearm provision into § 2119 might also be at least partially related Commerce Clause concerns, since the report of Mr. Keeney referred to above also stated that:

Notwithstanding our objection, if Congress wishes to enact [§ 2119], it should make ap-

propriate findings with respect to the impact on motor vehicle robbery on interstate commerce. *See e.g. Perez v. United States*, 402 U.S. 146 [91 S.Ct. 1357, 28 L.Ed.2d 686] (1971). In making such findings, it may be helpful to give consideration to the fact that firearms typically are used in these robberies, and to the federal interest in controlling illegal firearms use.

March 31 Hearings, at 144.

permissible under the equal protection clause for Congress to create a classification by drawing a line at a point beyond which it could not constitutionally go. *See* Government's Memorandum, at 7–8, *citing Packer v. State of Utah,* 285 U.S. 105, 110, 52 S.Ct. 273, 274, 76 L.Ed. 643 (1932) ("It is a reasonable ground of classification that the State has power to legislate with respect to persons in certain situations and not with respect to those in a different one"); *United States v. Henry,* 504 F.2d 1335, 1337 (10th Cir.1974), *cert. denied,* 421 U.S. 932, 95 S.Ct. 1660, 44 L.Ed.2d 90 (1975) (same); *United States v. Wynde,* 579 F.2d 1088, 1092–3 (8th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 204, 58 L.Ed.2d 184 (1978); *see also United States v. Ziegenhagen,* 420 F.Supp. 72 (E.D.Wis. 1976).[16] While this is certainly so, it is not dispositive of the instant matter. The government's argument would be on target if it had been definitively established that the reach of the Commerce Clause would not extend so far as to permit Congress to criminalize the theft of cars in intrastate commerce. However, such is not the case. As noted in the previous section of this Memorandum, the Commerce Clause can, and sometimes does, permit the exercise of congressional authority over solely intrastate activity. *See Perez, supra,* and cases cited therein. In fact, in this case, the connections between car theft and interstate commerce set forth in the legislative history of § 2119— specifically, nationwide resale of car parts and increased cost of car ownership—both support the conclusion that thefts of intrastate cars affect interstate commerce as much as thefts of interstate cars.[17]

The rationality issue thus becomes a matter of degree. If it was settled that Congress could criminalize intrastate car thefts, its failure to do so based on doubt as to constitutionality would not be rationally related to the interest of shielding the statute from valid constitutional challenges. Put more simply, Congress' concern as to the constitutionality of the statute would be irrational and thus impermissible if there were no grounds for that concern.

The Court finds that Congress' constitutional concern over its power to regulate the theft of intrastate cars was rational. Several factors support this conclusion. First, Congress had been warned by the Justice Department that the statute might be unconstitutional without a stated nexus to interstate commerce. As noted above, during testimony before the Subcommittee on Crime and Criminal Justice, a Department of Justice official told the Subcommittee that the version of § 2119 that had no stated tie to interstate commerce "would be subject to serious challenge" on "jurisdictional" grounds. It was not irrational for Congress to heed the warnings of the governmental department that is responsible for executing Congress' criminal legislation, and, indeed, for supporting the constitutionality of that legislation in court. Second, the "vehicle" statutes that appear most closely related to § 2119 all include some type of limitation explicitly restricting their application to things "in commerce": e.g., 18 U.S.C. § 2312 (prohibiting interstate transportation of a previously stolen vehicle), 18 U.S.C. § 2313 (prohibiting receipt of a stolen vehicle after it

16. In *Ziegenhagen,* the defendant argued that a gun control statute denied him equal protection because it prohibited only the possession of guns shipped in interstate commerce. The court rejected this position, stating:

"The legislature may select one phase of one field and apply a remedy there, neglecting the others, ..." *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489 [75 S.Ct. 461, 465, 99 L.Ed. 563] (1955). Here, Congress may have focused on the interstate transport of firearms and left the area of intrastate transport for whatever regulation the states might respectively deem appropriate.... Such a decision does not violate equal protection.

*Ziegenhagen,* 420 F.Supp. at 75. To this Court's reading, the *Ziegenhagen* analysis merely begs the question. While it might not be a difficult burden to bear, it appears to the Court that Congress can leave certain aspects of federal legislation to state control only if Congress can demonstrate the rationality of doing so.

17. There is statutory precedent for the exercise of congressional power over *all* cars. 15 U.S.C. § 1981, *et seq.,* creating civil penalties for altering car odometers, applies by its terms to all cars, regardless of their interstate status. The legislative purpose of § 1981, as set forth in the statute itself, states that "motor vehicles move in the current of interstate and foreign commerce or affect such commerce."

had previously been transported in interstate commerce). *See also* 18 U.S.C. § 2314 (prohibiting interstate transportation of previously stolen property worth at least $5,000), 18 U.S.C. § 2315 (prohibiting receipt of stolen property worth at least $5,000 after it had previously been transported in interstate commerce); 18 U.S.C. § 659 (prohibiting theft of goods that were "moving as, or were a part of, or constituted an interstate or foreign shipment"), 18 U.S.C. § 922(g)(1) (prohibiting a felon from shipping or possessing a firearm in or affecting commerce or receiving a firearm which has been shipped or transported in interstate commerce), 18 U.S.C. § 1201(a)(1) (requiring interstate transportation of a kidnapped person as element of kidnapping offense), 18 U.S.C. § 1343 (requiring use of "wire, radio, or television communications in interstate or foreign commerce" as element of wire fraud offense), 18 U.S.C. § 1952(a)(3) (prohibiting interstate travel for purpose of carrying out unlawful activity), 15 U.S.C. § 77q(a) (requiring "transportation or communication in interstate commerce or by the use of the mails" as element of securities fraud offense). On the other hand, those situations in which Congress has extended its Commerce Clause reach so far as to criminalize solely intrastate conduct appear to be fewer and of more recent vintage. *See* pp. 829–830, and n. 4, *supra.* Therefore, it would certainly be rational for Congress to place the anti-carjacking statute within the traditional statutory formulation that draws a distinction between interstate and intrastate commerce regulations.

Finally, the defendant's burden in proving irrationality in the context of an equal protection challenge is a tall one, indeed. *See, e.g., Johnson v. Cohen,* 836 F.2d 798, 806 (3d Cir.1987) ("In order for a statute to withstand scrutiny under [the rationality] test, the government need only demonstrate that the statute does not arbitrarily discriminate against an identifiable group of persons."); *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970) ("It is enough that the State's action be rationally based and free from invidious discrimination."). Not surprisingly, the defendant has failed to show that Congress, in making this classification, acted "arbitrarily" or "invidiously." The court is satisfied that the classification made by Congress, even if created out of caution, and even if perhaps not constitutionally mandated, is rational, not invidious and of the type that is constitutionally obnoxious, offensive, or repugnant.

In sum, the Court holds that under the circumstances of this case it was both a legitimate and rational function of legislative craftsmanship to shape the contours of the anti-carjacking statute to perceived safe constitutional bounds for fear that failure to do so would render the legislation vulnerable to invalidation.

#### c. *Vagueness*

■ The defendant claims that both § 2119 and the instant indictment are vague. The defendant does not identify which portion of each he finds vague, or why the statute or the indictment as a whole are vague, but, instead, merely states the conclusion that both are impermissibly indefinite.

The Supreme Court has stated the test for evaluating whether a statute is vague as follows:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson,* 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

Section 2119 satisfies both of the vagueness concerns because it contains no ambiguities. In *United States v. Donahue,* 948 F.2d 438, 441 (8th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1600, 118 L.Ed.2d 314 (1992), the Court addressed the sufficiency of language nearly identical to that contained in § 2119. The Court stated:

> A statute that reads, in relevant part, "Whoever, by force and violence, or by intimidation, takes ... from the person or presence of another ... any ... money ... belonging to ... any bank ... [s]hall be ... imprisoned," 18 U.S.C. § 2113(a), does not " 'fail[ ] to give a person of ordi-

nary intelligence fair notice that his contemplated conduct is forbidden by the statute,' *United States v. Harriss,* 347 U.S. 612, 617, 98 L.Ed. 989, 74 S.Ct. 808 [812] (1954), [n]or is [it] so indefinite that 'it encourages arbitrary and erratic arrests and convictions,' *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839 [ ], 31 L.Ed.2d 110 (1972)." *Colautti v. Franklin,* 439 U.S. 379, 390, 58 L.Ed.2d 596, 99 S.Ct. 675 [683] (1979). One does not have to be a rocket scientist to know that bank robbery is a crime; and the statute merely makes *malum prohibitum* (and punishable in federal court) that which is already *malum in se.*

*Donahue,* 948 F.2d at 441. To the same extent, an understanding of § 2119 requires no superior intellectual attributes.

 Finally, the indictment is not vague. The standard for testing the adequacy of an indictment is well established: "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (*quoting Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)). An indictment need not set forth detailed information regarding the government's factual proof. *United States v. Williams,* 679 F.2d 504, 508 (5th Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 963 (1983). The indictment herein meets this standard, since each of the counts sets forth sufficient facts relating to the essential elements of the crimes charged with sufficient particularity.[18]

## III. CONCLUSION

The defendant's motion to dismiss the indictment must be denied because: 1) 18 U.S.C. § 2119 is a valid exercise of congressional Commerce Clause powers, 2) the fact that the statute applies only to thefts of cars previously transported in interstate commerce does not violate the constitutional guarantee of equal protection, and 3) neither § 2119 nor the indictment are impermissibly vague.

---

18. Defendant's motion also claims that the indictment "does not state sufficient facts as to the defendant ... to constitute an offense against the United States of America" and that the indictment "fails to allege the necessary essential elements of the offense as to the defendant. . . ." To the extent these claims overlap with defendant's vagueness claims, they are rejected for the reasons stated above. To the extent they differ, defendant has not addressed them in his memorandum, and, in any event, they are rejected as having no merit.