UNITED STATES of America

v.

Derris Lamone CORTNER and
Terrence Orlando Osteen.

No. 3:93–00009.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 19, 1993.

Asst. U.S. Atty., Debra Teufel Phillips, Nashville, TN, for U.S.

Irwin Venick, Nashville, TN, for Derris Lamone Cortner.

Jude Lenahan, Nashville, TN, for Terrence Orlando, Osteen.

## MEMORANDUM

WISEMAN, District Judge.

Before the Court is a motion to dismiss Count One of the indictment charging a violation of 18 U.S.C. § 2119, § 101 of the Anti Car Theft Act of 1992, H.R. 4542, 102 Congress, Second Session, U.S. Code Cong. & Admin.News 1992, p. 2829 (hereinafter the "carjacking statute").

The facts of this case are that two Tennessee residents allegedly took from another Tennessee resident at gunpoint an automobile which was in Tennessee and which was subsequently recovered in Tennessee. The automobile was not manufactured in Tennessee, so it presumably had at one time traveled in interstate commerce. There is no suggestion in this case that the car might have been headed for a chop shop or that it was intended to be shipped interstate and sold in another state. This is a pure case of *intrastate* automobile theft at gunpoint.

■ The Congress may act only pursuant to a power granted to it by the Constitution. *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405, 4 L.Ed. 579 (1819). The power to regulate interstate commerce is specifically granted to the Congress by the Commerce Clause, U.S. Constitution, Article I, Section 8, Clause 3. This represents the broadest base of congressional power. *Nevada v. Skinner*, 884 F.2d 445 (9th Cir.1989), *cert. den.*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990). In *Hodel v. Indiana*, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981), the Supreme Court established the parameters for the exercise of the Commerce Clause power. "The Court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a Congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends." *Id.* at 323–24, 101 S.Ct. at 2383. In rejecting a similar attack upon the constitutionality of the carjacking statute, the District Court in *U.S. v. Watson*, 815 F.Supp. 827 (E.D.Pa.1993), found three contexts in which the exercise of

the Commerce Clause power will support the enactment of federal criminal statutes:

> The exercise of Commerce Clause power will support the enactment of federal criminal statutes in at least three contexts: *One*, where the regulations relates to things "in commerce," be it misuse of the channels of interstate commerce; *two*, where the targeted activity occurs solely intrastate but affects interstate commerce; and *three*, where the regulation involves protection of the instrumentalities of interstate commerce themselves.

*Id.* at 829 (citations omitted.)

■ Except for the possession by a convicted felon of a firearm that has previously traveled in interstate commerce, all of the examples given by the *Watson* court involve a nexus between the criminal act and interstate commerce (i.e., transportation across state lines of stolen automobiles, merchandise, securities or persons for purposes of prostitution). To say, however, that because something once traveled interstate it remains in interstate commerce after coming to rest in a given state, is sheer sophistry. This Court, at one time, owned a 1932 Ford which was manufactured in Detroit in the year 1931 and transported to the state of Tennessee. It remained in the state of Tennessee thereafter. Now if this car were hijacked today, some sixty years later, is it still in interstate commerce? All Saturn automobiles and some Nissans are now manufactured in the state of Tennessee. If a carjacking occurs in Tennessee as to a Saturn or Nissan made in Tennessee, then the carjacking statute does not apply. If the public welfare truly requires this legislation, then it unfairly discriminates against Tennesseans who own Saturns; if it is sufficient to invoke the powers of the Commerce Clause that something has been manufactured outside the state of Tennessee and previously transported here, 90% of the merchandise on every merchant's shelf will qualify and any robbery of any store can be federalized by the Congress under this rationale.

The *Watson* court also found that cars are "in and of themselves, *instrumentalities* of interstate commerce." *Watson*, 815 F.Supp. at 831. It goes on to argue that if Congress can regulate the "destruction of aircraft," 18 U.S.C. § 32, then it can regulate other instrumentalities of commerce such as automobiles. *Id.* at 831–32. The analogy is inapt. Regulation of the airways and aircraft has occupied a special position in Federal preemption because of the uniquely national nature of the airways and air travel.[1] If anything that will take you across a state line is an "instrumentality of commerce," then there is justification for Congress to regulate anything done on a bicycle or, for that matter, on foot. The Framers traveled to Philadelphia on horseback or by horse and carriage. Can it be imagined that in constructing the Commerce Clause they intended to regulate and punish horse stealing?

The Congress, in its legislative justification for the carjacking act, made the findings that some cars went to chop shops and the parts were then sent across state lines, and that some cars were carjacked and sent intact across state lines. They made a further finding that the automobile insurance of all car owners would be raised by the theft of automobiles, thus justifying an "affecting commerce" determination. However, any robbery of any merchant will cause an insurance loss which in turn must be accounted for in the premiums of every other insured. If this rationale can be used to justify this act under the Commerce Clause, then there is absolutely no limit to what the Congress can do. Furthermore, if the intended entry into interstate commerce of the fruits of the crime is the justification for federalization, it would seem that that would become a necessary element of proof of the crime and, therefore, in order to withstand constitutional attack, the intended entry must be proven. *Cf. United States v. Voss*, 787 F.2d 393, 397 (8th Cir.1986) (finding not even a *de minimus* impact on interstate commerce from attempted arson, and so federal arson statute inapplicable).

---

1. As Justice Jackson stated, "[a]ir as an element in which to navigate is even more inevitably federalized by the commerce clause than is navigable water.... Federal control is intensive and exclusive." *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303, 64 S.Ct. 950, 956, 88 L.Ed. 1283 (Jackson, J., concurring).

The Congress has had a recent penchant for passing a federal criminal statute on any well-publicized criminal activity. The courts, in an obeisant deference to the legislative branch, have stretched the Commerce Clause of the Constitution beyond the wildest imagination of the Framers and beyond any rational interpretation of the language itself. At every meeting of federal judges that I attend there is the complaint that the Congress is broadening federal jurisdiction to the point where we are unable to do our jobs. The historically unique and discrete jurisdiction of the Federal Courts is being distorted. The constant lament is that the constitutional concept of Federalism is being eviscerated by the Congress. The Congress is able to do this, however, only because we in the judicial branch are willing to interpret the Commerce Clause of the Constitution so broadly.

It has been a widely held and historically accepted premise of our governmental structure that law enforcement was primarily the business of state and local governments and that we as a nation deplored the idea of a national police force. *See, e.g., Bell v. United States,* 462 U.S. 356, 362–66, 103 S.Ct. 2398, 2402–04, 76 L.Ed.2d 638 (1984) (Stevens, J., dissenting) (discussing the relationship between state and federal criminal laws). The ascendancy of the Federal Bureau of Investigation resulting from Prohibition, the Communist scare and, now, the proliferation of federal law enforcement agencies as a result of the drug problem have caused an erosion of this principle. That does not mean, however, that it has lost its basic validity.

It is the judgment of this Court that Section 101(a) of the Anti Car Theft Act of 1992, 18 U.S.C. § 2119, lacks any rational nexus to interstate commerce and that the Congress lacks the power to legislate thereon. The motion to dismiss is granted.