**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 93-7554
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GREGORY HARRIS and TERENCE HOSKINS,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Mississippi
_____

(June 29, 1994)

Before WISDOM, DAVIS, and DUHÉ, Circuit Judges.

DAVIS, Circuit Judge:

Gregory Harris and Terence Hoskins challenge their convictions and sentences for aiding and abetting each other in a "carjacking" in violation of 18 U.S.C. § 2119, and for using and carrying a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1).  We affirm.

I.

On December 12, 1992, Barbara Scott lent her 1976 Buick Electra[1] to Michael Anderson.  At 10:00 p.m. that same day, Michael Anderson lent the car to his nephew, Frank Anderson, and Frank's

_____

[1]    The car was manufactured in Flint, Michigan, and titled in Arkansas and Mississippi.

friend, Christopher Williams, so that the two boys could take the girl next door to a club.  After dropping the girl off, the boys drove past other clubs, but did not stop.  They then picked up Johnny Bradberry and Herbert Williams.  After riding around for awhile, the boys were taking Herbert Williams home when they were flagged down by Michael Anderson.  Defendants, Gregory Harris and Terence Hoskins, were standing across the street from where the car stopped.

At trial, Frank Anderson testified that he was talking to his uncle, when Hoskins and Harris approached the car.  Hoskins was carrying an ax handle and grabbed the car door that Frank Anderson was getting in and held it open.  Harris was armed with a 12 gauge sawed-off shotgun and went around to the passenger's side and pointed the gun across the top of the car at Anderson.

As they approached, Hoskins and Harris demanded to know why the car's occupants had "jumped" them.  After the occupants denied the accusation, Harris opened the back door and put the gun to Herbert Williams' head.  Frank Anderson testified that:

> Then him [Gregory Harris] and Terence started hollering, get out the car.  Get out the car.  And then when he cocked it, we got out of the car and we started running.

Hoskins then jumped into the car and drove away, while Harris chased the occupants of the car through a field.  Frank Anderson's testimony was corroborated by the other occupants of the car.

After Hoskins drove away, the former occupants of the car called the police.  They reported what had happened and identified Harris and Hoskins by name.  Sgt. Keith White was one of the

2

officers who responded to the call. About 30 minutes later, Sgt. White responded to a report of a possible robbery of a Double Quik store by two men. He parked a block away and approached the store on foot. He observed one man with panty hose on his head standing in front of the store, but did not see a second man and assumed he was inside. Sgt. White observed the man outside for about five minutes, until the man walked around the corner and discovered Sgt. White.

When they confronted each other, Sgt. White had his gun drawn and placed the man against a wall. White asked him where his "partner" was, and he said he had gone across the street; the man identified himself as Terence Hoskins. Recognizing the name as one of the two reported to have taken the car, Sgt. White placed Hoskins under arrest and asked him: "Where did Harris go?" Hoskins responded: "I told you he went across the street." White then asked where the car was, and Hoskins told him. Finally, White asked where the car keys were, and Hoskins said in his pocket.

Hoskins and Harris were subsequently charged in a two-count indictment with aiding and abetting each other in a "carjacking" in violation of 18 U.S.C. § 2119 (count 1), and with using and carrying a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1) (count 2). A jury convicted the defendants on both counts, and the district court sentenced each defendant to 41-months imprisonment on count 1, and 60 months on count 2, the terms to be served consecutively.

II.

A.

On appeal, defendants argue first that the district court abused its discretion in denying their motion to change venue. Defendants contend that because the offense was committed in Greenville, Mississippi, and all the witnesses, counsel, and defendants were located there, the court violated Fed. R. Crim. P. 18 in fixing the place of trial at the Oxford Division.[2] Because "[a] district court judge has 'broad discretion in determining whether transfer is warranted,'" we review a denial of a motion to transfer under an abuse of discretion standard. **United States v. Dickie**, 775 F.2d 607, 609-10 (5th Cir. 1985).

In response to defendants' motion to transfer the case to the Greenville Division, the district court stated:

> In this particular instance, all parties have alluded to the fact that . . . these defendants are alleged to be members of some organization or gang there and the alleged victims belong to another gang.
>
> Having recognized the fact that this possibly could create some security problems for the trial of this case . . . the Court had requested of the United States Marshal that they make a security evaluation for the trial of this case and where it should be tried. . . . The home station of this court, the headquarters of the Court for the Northern District is in Oxford, Mississippi. . . . As we do with any case that involves more than ordinary security, we try to schedule those

---

[2]   Rule 18 provides that:

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

criminal cases in Oxford because that is the headquarters of the United States Marshals Service.  We have more officers and more equipment available to us to handle any situation that might arise there at Oxford.

Now, there is another factor.  The Court must take into consideration . . . the fact that I have other cases scheduled, other criminal cases scheduled at the same time there in Oxford.  Therefore, it is important to this court that I conduct any trial at a place and a time when I can expeditiously and efficiently handle the business of the Court. . . .

The Court is also . . . persuaded that in order to avail itself of the suggested security arrangements of the Marshals Service, that the trial of this case should be held at the headquarters of the Court, and the headquarters of the Marshals Service, the courtroom there in Oxford, so that we can avail ourselves of the proper and maximum security arrangements.  Therefore, the Court declines to move the case to Greenville for trial.

To accommodate the defendants, the district court ordered that their witnesses be compelled to attend at government expense.  At trial, defendants called five witnesses and at no time complained of any prejudice or inconvenience.

As we have noted, "[i]n deciding the place of trial within the district the court must balance the statutory factors of the convenience of the defendant and witnesses with the prompt administration of justice."  **In re Chesson**, 897 F.2d 156, 159 (5th Cir. 1990).  In this case, the district court considered defendants' interest in a trial in Greenville, but found it outweighed by the security measures available in Oxford and the trial of other criminal cases in Oxford at the same time.

Rule 18 allows a court to consider "the prompt administration of justice" in fixing the place of trial, and "matters of security clearly fall within that consideration."  **United States v.**

5

**Afflerbach**, 754 F.2d 866, 869 (10th Cir. 1985), **cert. denied**, 472 U.S. 1029 (1985).  In addition, "the prompt administration of justice includes more than the case at bar; the phrase includes the state of the court's docket generally.  The court must balance not only the effect of the location of the trial will have upon the defendants and their witnesses, but it must weigh the impact the trial location will have on the timely disposition of the instant case and other cases."  **Chesson**, 897 F.2d at 159.  We therefore conclude that the district court did not abuse its discretion in denying defendants' motion for change of venue.

B.

Defendants argue next that the government failed to present sufficient evidence to convict them of aiding and abetting each other in the commission of a carjacking and in the use of a firearm in relation to a crime of violence.  They argue that they and the occupants of the car were members of rival gangs, and that their intent in forcing the occupants out of the car was to retaliate for an incident that occurred earlier in the evening.  In addition, Hoskins maintains that he drove away in the car as an afterthought, and Harris claims that he had no idea that Hoskins was going to do so.

In evaluating the sufficiency of the evidence, we must "determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt."  **United States v. Sparks**, 2

6

F.3d 574, 579 (5th Cir. 1993), **cert. denied**, 114 S.Ct. 899 (1994). We must accept all credibility choices that support the jury's verdict. **Id.**

In order to convict defendants of carjacking in violation of 18 U.S.C. § 2119, the government must prove that: "the defendant, (1) while possessing a firearm, (2) took from the person or presence of another (3) by force and violence or intimidation (4) a motor vehicle which had moved in interstate or foreign commerce." **United States v. Singleton**, 16 F.3d 1419, 1422 (5th Cir. 1994). In order to convict defendants of using a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1), the government must prove: (1) that defendant knowingly used or carried a firearm, and (2) the use or carrying of the firearm occurred during and in relation to a "crime of violence." **United States v. Zukinta**, 830 F. Supp. 418, 421 (E.D. Tenn. 1993). Finally, to prove aiding and abetting, the government must show that defendants: (1) associated with the criminal enterprise; (2) participated in the venture; and (3) sought by action to make the venture succeed. **United States v. Mergerson**, 995 F.2d 1285, 1290-91 (5th Cir. 1993), **cert. denied**, 114 S.Ct. 1310 (1994).

In this case, the government presented sufficient evidence to allow a rational jury to convict defendants on both counts. When Hoskins and Harris approached the car, Harris was armed with a sawed-off shotgun, and Hoskins had an ax handle. Hoskins grabbed the driver's door and held it open. Harris went around to the other side and leveled the gun at Anderson across the top of the

7

car.  Harris opened the back door, stuck the gun in the car, and pointed it at Herbert Williams' head.  Harris and Hoskins began hollering "get out the car.  Get out the car."  When Harris cocked the gun, the passengers all jumped out and ran, and as they fled, Hoskins jumped in the car and drove away.

From this evidence, the jury was entitled to conclude that Harris knowingly possessed a firearm, and that both men used force and intimidation in taking the car.  The defendants' motive in taking the car is irrelevant.  The government therefore presented sufficient evidence to allow a rational jury to convict defendants as charged.

### C.

Defendants argue next that the carjacking statute is unconstitutionally vague.  They contend that it is flawed because it lacks an element of intent, and because it applies only to vehicles that have been transported in interstate commerce.  Defendants also argue that the statute was intended to apply only to thefts for profit and not to gang violence.

The carjacking statute, 18 U.S.C. § 2119, provides that:

> Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--
>
> > (1) be fined under this title or imprisoned not more than 15 years, or both,
> >
> > (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and

8

> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

Although the statute does not include a scienter requirement, it is supplied by "the general rule of construction that 'knowledge of the facts constituting the offense is ordinarily implied' where a 'statute does not expressly mention any mental element.'" **United States v. Wilson**, 884 F.2d 174, 178 (5th Cir. 1989).

Relying on their reading of the legislative history, defendants argue next that Congress did not intend for the statute to apply to the facts of this case. They focus on the Congressional concern with "chop shops" and organized theft rings. However, in resorting to the legislative history, defendants ignore the first rule of statutory construction that: "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." **Meredith v. Time Ins. Co.**, 980 F.2d 352, 356 (5th Cir. 1993). Nevertheless, the legislative history makes clear that Congress intended "to take effective measures to thwart all motor vehicle theft, not just theft related to 'chop shops.'" H.R. Rep. No. 851, 102d Cong., 2d Sess., **reported in** 1992 U.S.C.C.A.N. 2829, 2844.

Defendants also argue that the statute is unconstitutionally vague because it applies only to vehicles transported in interstate commerce. Citing **United States v. Cortner**, 834 F. Supp. 242 (M.D. Tenn. 1993), defendants contend that the statute would not apply to a vehicle which never left its state of manufacture. However, as

9

one court has held, it is a rational exercise of Congressional power "to place the anti-carjacking statute within the traditional statutory formulation that draws a distinction between interstate and intrastate commerce regulations." **United States v. Watson**, 815 F. Supp. 827, 836 (E.D. Pa. 1993). Because the carjacking statute applies to the facts of this case and because it properly applies only to cars transported in interstate commerce, we conclude that it is not unconstitutionally vague.

D.

Defendants argue next that the statute is unconstitutional because it lacks a rational nexus to interstate commerce. The Supreme Court has instructed that: "A court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends." **Hodel v. Indiana**, 452 U.S. 314, 323-24 (1981).

Recently, in **United States v. Johnson**, ___ F.3d ___, 1994 WL 140293 (6th Cir.), the Sixth Circuit concluded that the carjacking statute bears a rational relationship to interstate commerce:

> It may well be that the carjacking statute is unwise and encroaches on traditional views of federalism, as Judge Wiseman observes in **United States v. Cortner**, 834 F. Supp. 242 (M.D. Tenn. 1993), but it is not unconstitutional under current Commerce Clause doctrine. So long as the activity regulated has an effect on interstate commerce it makes no difference that the transported item is now "at rest" and is no longer "in" interstate commerce. A long line of cases establishes the general or aggregate "economic effect" standard and

10

does away with the requirement that the individual act at issue must be "in interstate commerce" or involve movement in interstate commerce . . . . It is obvious that carjackings as a category of criminal activity have an effect on interstate travel and the travel of foreign citizens to this country. Thus we must reject defendant's argument that the carjacking statute as applied here is unconstitutional.

**Id.** at *3. A number of district courts also have upheld the statute against Commerce Clause challenges. **See United States v. Payne**, 841 F. Supp. 810 (S.D. Ohio 1994); **United States v. Stith**, 824 F. Supp. 128 (S.D. Ohio 1993); **United States v. Eskridge**, 818 F. Supp. 259 (E.D. Wis. 1993); **United States v. Watson**, 815 F. Supp. 827 (E.D. Pa. 1993). Because of the obvious effect that carjackings have on interstate commerce, we hold that the carjacking statute is a valid exercise of Congress's Commerce Clause powers.

### E.

Finally, defendants argue that their convictions under 18 U.S.C. § 2119 and 18 U.S.C. § 924(c)(1) violate the Double Jeopardy Clause. However, we expressly rejected this argument in **United States v. Singleton**, 16 F.3d 1419, 1420 (5th Cir. 1994): "Although we agree with the district court that the firearms offense is not factually distinct from the carjacking offense, we hold that Congress has clearly indicated its intention to impose cumulative punishments."

### III.

Because we find no merit in defendants' arguments, we affirm their convictions and sentences.

AFFIRMED.

11