**UNITED STATES of America, Plaintiff,**

v.

**William ESKRIDGE, Jr., and Tyrone A. Pointer, Defendants.**

No. 93–Cr–15.

United States District Court,
E.D. Wisconsin.

March 30, 1993.

Christian R. Larsen, Asst. U.S. Atty., Office of United States Attorney, Milwaukee, WI, for plaintiff.

David Saggio, Milwaukee, WI, for defendants.

## DECISION and ORDER

TERENCE T. EVANS, Chief Judge.

The defendants are charged in a two-count indictment in this case. In count one, it is alleged that each defendant, while in possession of a firearm, was involved in the taking of a motor vehicle from another person by means of force and intimidation. The charge in count one, commonly referred to as "carjacking," is coupled with a charge in count two alleging that the defendants, during the crime, possessed a firearm. The crime is alleged to be a crime of violence.

Various pretrial motions were filed by defendant Pointer. Magistrate Judge Robert L. Bittner, in a decision released on March 8, 1993, recommended the denial of a number of motions and ordered the denial of two others. A timely objection to magistrate judge's recommendation was filed.

I have reviewed the file in this case, and I believe magistrate judge correctly assessed the situation. I AFFIRM his orders and accept his recommendations. In addition, I find no basis for even withholding the entry of an order denying the motion to change venue in this case. The thin submission in support of a change of venue is inadequate to prompt a moving of this trial outside of this district.

SO ORDERED.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE TERENCE T. EVANS AND ORDER RE: DEFENDANT POINTER'S PRETRIAL MOTIONS

BITTNER, United States Magistrate Judge.

### NATURE OF CASE

On January 20, 1993 a federal grand jury sitting in this District returned a two (2) count indictment against defendant William Eskridge, Jr. Count One of the indictment charged defendant Eskridge with, while in possession of a firearm, taking a motor vehicle which had been transported and shipped in interstate commerce from a person by means of force and intimidation, in violation of 18 U.S.C. § 2119 and § 2. Count Two charged defendant Eskridge with using and carrying a firearm, during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and § 2. Subsequently, on February 2, 1992 a federal grand jury sitting in this District returned a two (2) count superseding indictment charging crimes identical to those charged in the original indictment, but adding defendant Tyrone A. Pointer as a defendant. The defendants appeared before this Court on February 5, 1993 for arraignment. Defendant Eskridge entered a plea of not guilty and the Court entered a plea of not guilty on behalf of defendant Pointer, who was not represented by counsel at that time. Subsequently, counsel was appointed to represent defendant Pointer and, pursuant to the pretrial scheduling order issued at the arraignment, filed various pretrial motions on behalf of defendant Pointer. No motions were filed by defendant Eskridge or the government. The pretrial motions of defendant Pointer are ready for resolution and will be addressed herein.

### BOILER PLATE MOTION

Review of defendant Pointer's motions discloses his motion for severance is "boiler plate" and, therefore, subject to summary disposition. *See The Civil Justice Expense and Delay Reduction Plan,* Other Procedures Section, Subsection 3 (E.D.Wis. Dec. 23, 1991). Relying on Fed.R.Crim.P. 14, defendant Pointer presents six (6) reasons he will be prejudiced by a joint trial. None of the grounds he advances warrant severance and, consequently, his motion for severance will be denied. Defendant Pointer asserts a joint trial will create a conflict of interest between the defendants, resulting in the "possibility" of antagonistic defenses, as well as denying him access to codefendant Eskridge's "possible" exculpatory testimony. These contentions are nothing more than

speculation and defendant Pointer proffers no facts in support of them and, therefore, he provides no basis for severance on such grounds. Defendant Pointer also cites, as reasons for severance, potential disparities in evidence, cumulation of evidence, inferences of criminal disposition, and the possibility of being found guilty by association. The usual cure to such potential problems is jury instruction and defendant Pointer has posited no reason why such remedy is not applicable in this case.

## MOTION TO DISMISS

Defendant Pointer moves the Court for issuance of an order dismissing Count One of the indictment against him on the ground this Court lacks jurisdiction over him, because the United States Congress (hereinafter referred to as Congress) did not have the authority to pass the "carjacking" provisions of the Anti Car Theft Act of 1992, enacted on October 25, 1992, and codified as 18 U.S.C. § 2119, which is the charging statute for Count One. Defendant Pointer argues the sole act of taking a motor vehicle which has been shipped in interstate commerce does not "affect interstate commerce" and, therefore, Congress had no power under the Commerce Clause to make carjacking a federal crime."

■■■ Congress enacted Section 2119, pursuant to the Commerce Clause of the United States Constitution, which empowers it "[t]o regulate commerce with foreign nations and among the several States, and with Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Congress has the power to enact a criminal statute pursuant to the Commerce Clause as long as the statute controls acts which have, at least, a *de minimis* effect on interstate commerce. *United States v. Stillwell*, 900 F.2d 1104, 1110 (7th Cir.), *cert. denied*, 498 U.S. 838, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990). In determining whether there is an effect on commerce, the relevant inquiry is whether the *aggregate* class of activities has more than a *de minimis* effect on interstate commerce and is not limited to a determination of whether a particular defendant's actions, standing alone, had the necessary more than *de minimis* effect. *United States v.*

*Stillwell*, 900 F.2d at 1111. If the Court concludes Congress has "any rational basis" for finding a regulated activity affects interstate commerce, the statute must be upheld as a proper exercise of Congress' power to legislate under the Commerce Clause. *See United States v. Stillwell*, 900 F.2d at 1111.

■ Section 2119 provides in pertinent part:

Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

\*   \*   \*   \*   \*   \*

(b) FEDERAL COOPERATION TO PREVENT 'CARJACKING' AND MOTOR VEHICLE THEFT.—*In view of the increase of motor vehicle theft with its growing threat* to human life and *to the economic well-being of the Nation,* the Attorney General, acting through the Federal Bureau of Investigation and the United States Attorneys, is urged to work with State and local officials to investigate car thefts, including violations of section 2119 of title 18, United States Code, for armed carjacking, and as appropriate and consistent with prosecutorial discretion, prosecute persons who allegedly violate such law and other relevant Federal statutes.

Thus, the language of the statute, itself, includes the specific Congressional finding that motor vehicle theft poses an increasing threat to the "economic well-being of the nation" and, thereby, impacts on interstate commerce. Similar findings are also reflected in the legislative history of the statute. Specifically, in the accompanying House report discussing auto theft, it was noted:

Enterprises using all three profiteering methods regularly engage in interstate, and even international, trafficking of automobiles and auto parts. Just as important, auto thieves have a severe and deleterious effect on interstate commerce by imposing significant costs on automobile owners.

The most obvious cost is reflected in increasing high automobile insurance premiums. According to testimony at the March 31 hearing, as much as 64% of an automobile owner's comprehensive insurance premium is attributable to theft claims. In addition, car owners often must take expensive security measures—such as anti-theft devices and off-street parking—to protect their investment. These costs depress the interstate commerce in automobiles by making car ownership considerably more expensive for consumers.

H.R.Rep. No. 851(I), 102d Cong., 2d Sess. 14–15 (1992), *reprinted in* 1992 U.S.C.C.A.N. 2829, 2831. As noted in *United States v. Stillwell*, 900 F.2d at 1111, the United States Supreme Court has taken an "expansive view" of Congress' power to legislate under the Commerce Clause. In light of that expansive interpretation, this Court concludes Congress could rationally believe that, in the aggregate, theft of motor vehicles has more than a *de minimis* effect on interstate commerce. This conclusion is supported by the legislative history documenting the utilization of interstate commerce by motor vehicle thieves in order to traffick the stolen vehicles, as well as the effect on interstate commerce by increasing automobile insurance premiums and increasing the costs of car ownership.

Since the application of Section 2119 to the defendants in this case is not an unconstitutional exercise of Congress' power under the Commerce Clause, this Court will recommend defendant Pointer's motion to dismiss be denied.

## MOTION TO SUPPRESS

Defendant Pointer moves the Court for issuance of an order suppressing a statement which he provided to City of Milwaukee Police Department (hereinafter referred to as MPD) law enforcement officers on January 22, 1993, while he was in custody after having been arrested on an outstanding state felony warrant. He contends he was not advised of his *Miranda* rights and did not knowingly and voluntarily waive such rights. An evidentiary hearing was conducted by the Court on March 1 and 2, 1993, at which time MPD Detectives Gregory J. Fritz, Peter Simet, and John M. Hagen testified on behalf of the government. The defendant testified on his own behalf. In addition to the evidence adduced at the hearing, the parties submitted a statement of uncontested facts.

■ Having heard the testimony at the hearing, this Court concludes the government has met its burden of proving, by the preponderance of the evidence, that the defendant was advised of his *Miranda* rights by Detective Hagen, prior to the commencement of interrogation, and freely and voluntarily waived such rights and provided the statement set forth in the "show up" report. During the course of the interview which began at approximately 2:44 p.m. and concluded at approximately 6:19 p.m., the defendant's needs were accommodated. He was given soda, coffee, popcorn, and allowed to use rest room facilities upon request. During the course of the interview the defendant never requested an attorney and was never threatened by law enforcement officers. The statement provided by defendant Pointer was memorialized in a three (3) page "show up" report which he reviewed and approved, with modifications, as indicated by his initials and signature.

The defendant's self-serving testimony that he was not advised of his *Miranda* rights, that he repeatedly asked for a lawyer, and that he did not provide the statement contained in the "show up report" is belied by the report itself, which: 1) states he was advised of his *Miranda* rights, a statement which defendant Pointer approved by writing his initials and signature beneath; 2) bears the notation "this is true" and his signature at the bottom of all three (3) pages; and 3) includes his initialed changes at various words and phrases of the statement. Furthermore, the defendant's testimony is diametrically opposite to that of the three (3) testifying law enforcement officers and, in balance, is not credible. Finally, this Court notes the defendant is no stranger to the criminal justice system. As to *Miranda* rights, the present case is *deja vu*. Notwithstanding the defendant's testimony, there is not one (1) scintilla of credible evidence that he was not properly advised of his rights or

that he did not knowingly and voluntarily waive such rights and provide law enforcement officers with a statement. The foregoing findings were announced by the Court after the close of the testimony at the hearing and the parties were advised the Court would recommend defendant Pointer's motion to suppress statements be denied.

## MOTION FOR CHANGE OF VENUE

Defendant Pointer moves the Court for issuance of an order changing the venue of the trial, pursuant to Fed.R.Crim.P. 21(a), on the ground there exists in this District so great a prejudice against him that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in this District. As a basis for this contention, he proffers a newspaper article discussing the charges in this case which appeared during 1993 in *The Milwaukee Journal*, Metro Section.

A court, in its discretion, may defer a determination of a pretrial venue motion until after the *voir dire* of the prospective jurors when the effects of pretrial publicity can be fully assessed. *United States v. Peters*, 791 F.2d 1270, 1296 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). "The ultimate question is whether it is possible to select a fair and impartial jury, and in most situations the *voir dire* examination adequately supplies the facts upon which to base that determination." *United States v. Peters*, 791 F.2d at 1296 (citation omitted).

Since *voir dire* examination is the preferable time for determination of whether pretrial publicity necessitates a change of venue, defendant Pointer's motion is premature and will be denied without prejudice.

## CONCLUSION

NOW THEREFORE, IT IS HEREBY RECOMMENDED that the United States District Judge enter an order DENYING defendant Pointer's motion to dismiss;

IT IS FURTHER RECOMMENDED that the United States District Judge enter an order DENYING defendant Pointer's motion to suppress;

IT IS ORDERED that defendant Pointer's motion for severance be and hereby is DENIED; and,

IT IS FURTHER ORDERED that defendant Pointer's motion for a change of venue be and hereby is DENIED without prejudice.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 13.03 (E.D.Wis.), whereby written objections to the foregoing recommendation may be filed in duplicate with the Clerk of Court within ten (10) days hereof. Failure to file a timely objection shall result in a waiver to your right to appeal.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 13.02 (E.D.Wis.), whereby written appeal from any order herein or part thereof may be filed within ten (10) days hereof.

Dated at Milwaukee, Wisconsin this 8th day of March, 1993.