728 A.2d 180

**Timothy HARRIS**

v.

**STATE of Maryland.**

**No. 81, Sept. Term, 1998.**

Court of Appeals of Maryland.

April 20, 1999.

598

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Appellant.

Mary Ann Ince, Asst. Atty. Gen (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

Appellant was convicted of the offense of carjacking, in violation of Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Article 27 § 348A.[1] The issue we must decide in this case is whether the trial court erred in instructing the jury that carjacking is not a specific intent crime. We conclude that carjacking is not a specific intent crime, and accordingly, we shall affirm the trial court.

---

1. Unless otherwise indicated, all statutory references herein shall be to Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Article 27.

I

We shall briefly state the facts. On November 26, 1996, Timothy Harris, Jack Tipton and several other friends were playing cards and drinking alcohol at a friend's house. Tipton offered to drive Harris home. Tipton testified that Harris became angry when Tipton refused to go to the District of Columbia, and that Harris forcibly removed Tipton from the car and drove away. Tipton reported the car as stolen.

Appellant was indicted by the Grand Jury for Prince George's County with the crimes of carjacking in violation of Art. 27, § 348A, unlawful taking of a motor vehicle in violation of Art. 27, § 342A, and second degree assault in violation of Art. 27, § 12A. At trial, Harris's defense was voluntary intoxication. He testified that he had consumed alcohol and smoked marijuana throughout the evening, and that he "blacked out" after leaving the get-together.

Appellant requested a jury instruction on voluntary intoxication, arguing that he was too intoxicated from drugs and alcohol to form the specific intent required for the offenses of carjacking and unlawful taking of a motor vehicle. The court declined to instruct the jury that carjacking required specific intent. The trial court instructed the jury that when charged with an offense requiring specific intent, a defendant cannot be guilty if he was so intoxicated by drugs and/or alcohol that he was unable to form the necessary intent. The court further instructed the jury that the unlawful taking of a motor vehicle was the only offense that required specific intent. As to the offense of carjacking, the trial court instructed the jury as follows:

An individual is guilty of carjacking when that individual obtains unauthorized possession or control of a motor vehicle from another individual in actual possession by force or violence, or by putting that individual in fear through intimidation or threat of force or violence.

The jury found Harris not guilty of the crime of unauthorized taking of a motor vehicle, and guilty of carjacking and assault.

Appellant noted a timely appeal to the Court of Special Appeals. We granted certiorari on our own motion to address the issue of whether specific intent is an element of the crime of carjacking.

## II

Maryland's carjacking statute, Art. 27, § 348A reads in pertinent part:

(b) *Elements of offense.*—(1) An individual commits the offense of carjacking when the individual obtains unauthorized possession or control of a motor vehicle from another individual in actual possession by force or violence, or by putting that individual in fear through intimidation or threat of force or violence.

\* \* \* \* \* \*

(c) *Penalty—In general.*—An individual convicted of carjacking ... is guilty of a felony and shall be sentenced to imprisonment for not more than 30 years.

(d) *Same—Additional to other offenses.*—The sentence imposed under this section may be imposed separate from and consecutive to a sentence for any other offense arising from the conduct underlying the offenses of carjacking or armed carjacking.

(e) *Defenses.*—It is not a defense to the offense of carjacking or armed carjacking that the defendant did not intend to permanently deprive the owner of the motor vehicle.

The State argues that the plain language of § 348A clearly establishes that carjacking is not a specific intent crime. The State observes that the trial court's carjacking instruction tracked the language of § 348A(b)(1). According to the State, the Legislature's failure to include language which would ordinarily indicate a specific intent requirement refutes Harris's claim that carjacking requires a specific intent to deprive without regard to duration. Rather, the Legislature clearly intended that the offense is committed without any additional

deliberate and conscious purpose or design to accomplish a specific and more remote result.

Appellant argues that carjacking requires specific intent "without regard to the intended duration of the deprivation." He argues that carjacking is a type of robbery without the need to prove a specific intent to deprive permanently. Alternatively, he argues that carjacking is the equivalent of an unauthorized use of a motor vehicle, preceded by an assault, battery, or an aggravated assault, and as such, requires the State to prove a specific intent to deprive, without regard to the duration of the intended deprivation. In particular, Appellant argues that carjacking is little more than robbery without the need to prove specific intent to *permanently* deprive, and the equivalent of unauthorized use preceded by an assault, battery, or an aggravated assault. Appellant maintains that the intent requirement of carjacking is like that of unauthorized use—that an intent to deprive *temporarily* is the specific intent requirement. Noting that the standard for specific intent is "whether, in addition to the general intent to do the immediate act, it embraces some additional purpose or design to be accomplished beyond that immediate act," Appellant reasons that "[c]arjacking requires that, through force or violence, or a threat of force or violence (the immediate act), a person obtains unauthorized possession or control of a motor vehicle (the purpose beyond the immediate act)."

### III

Generally there are two aspects of every crime—the *actus reus* or guilty act and the *mens rea* or the culpable mental state accompanying the forbidden act. *Garnett v. State*, 332 Md. 571, 577–78, 632 A.2d 797, 800 (1993). Maryland continues to observe the distinction between general and specific intent crimes. *Shell v. State*, 307 Md. 46, 65, 512 A.2d 358, 366–67 (1986). The distinction is particularly significant when a defendant claims that his voluntary intoxication prevents him from forming the requisite intent to commit a crime. *See id.* at 65, 512 A.2d at 367 (noting that the distinction "does serve to reconcile fairness to the accused with the need to protect the public from intoxicated offenders and to deter such

persons"); *Wieland v. State,* 101 Md.App. 1, 35, 643 A.2d 446, 463 (1994) ("It is a distinction that takes on critical importance most frequently in assessing the effect of voluntary intoxication on a defendant's capacity to entertain a certain *mens rea.*"). It has long been the law in Maryland that while voluntary intoxication is a defense to a specific intent crime, it is not a defense to a general intent crime. *See Shell,* 307 Md. at 58, 512 A.2d at 367 (conducting extensive review of Maryland cases addressing asserted defense of voluntary intoxication and specific intent generally).

Specific intent has been defined as not simply the intent to do an. immediate act, but the "additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result." *Shell,* 307 Md. at 63, 512 A.2d at 366 (quoting *Smith v. State,* 41 Md.App. 277, 305, 398 A.2d 426, 443 (1979)); *see also In re Taka C.,* 331 Md. 80, 84, 626 A.2d 366, 368–69 (1993); *Ford v. State,* 330 Md. 682, 702, 625 A.2d 984, 993 (1993); *State v. Gover,* 267 Md. 602, 606, 298 A.2d 378, 381 (1973). In *Shell,* we quoted with approval the explanation of specific intent by Judge Moylan, writing for the Court of Special Appeals in *Smith v. State,* 41 Md.App. at 305–06, 398 A.2d at 442–43:

A specific intent is not simply the intent to do the immediate act but embraces the requirement that the mind be conscious of a more remote purpose or design which shall eventuate from the doing of the immediate act. Though assault implies only the general intent to strike the blow, assault with intent to murder, rob, rape, or maim requires a fully formed and conscious purpose that those further consequences shall flow from the doing of the immediate act. To break and enter requires a mere general intent but to commit burglary requires the additional specific intent of committing a felony after the entry has been made. A trespassory taking requires a mere general intent but larceny (or robbery) requires the specific *animus furandi* or deliberate purpose of depriving the owner permanently of the stolen goods. *This is why even voluntary intoxication may negate a specific intent though it will not negate a mere general intent.*

**604**

▬▬▬▬▬▬

\* \* \* \* \* \* \* \*

The larger class 'specific intent' includes such other members as 1) assault with intent to murder, 2) assault with intent to rape, 3) assault with intent to rob, 4) assault with intent to maim, 5) burglary, 6) larceny, 7) robbery and 8) the specific-intent-to-inflict-grievous-bodily-harm variety of murder.[2] Each of these requires not simply the general intent to do the immediate act with no particular, clear or undifferentiated end in mind, but the additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result.

307 Md. at 62–63, 512 A.2d at 366 (emphasis added). Chief Justice Traynor, writing for the Supreme Court of California, explained the difference between specific intent and general intent crimes:

When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.

*People v. Hood,* 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370, 378 (1969).

▬ By way of example, the Court of Special Appeals has held that the common law crime of assault of the intent to frighten variety is a specific intent crime. *Wieland,* 101 Md.App. at 38, 643 A.2d at 464. That crime has been defined as "the doing of an act that places the victim in apprehension

---

**2.** Although the common law crimes of assault with intent to murder, rob, rape or maim, and burglary have been changed by statute, *see* Art. 27, §§ 12–12A–7 and Art. 27, §§ 28–35B, the analysis remains unchanged. *See also Wieland v. State,* 101 Md.App. 1, 38, 643 A.2d 446, 464 (1994) and *infra* page 605, noting the distinction between the two varieties of assault.

of immediate bodily harm *with the intent to cause such apprehension." Id.,* 643 A.2d at 464. The general intent is the intent to commit the immediate act, i.e., the intent to make the threatening gesture. *Id.,* 643 A.2d at 464. An additional requirement is that there be a specific intent for that immediate act to place the victim in fear of imminent bodily harm. *Id.,* 643 A.2d at 464. The court noted, by way of contrast, that an assault of the attempted battery type is a general intent crime requiring no specific intent. *Id.,* 643 A.2d at 464. Judge Moylan, writing for the court, noted:

> Accurately employed, the term 'specific intent' designates some specific mental element or intended purpose above and beyond the mental state required for the mere *actus reus* of the crime itself. Were it not so, every intentional crime would be deemed a specific intent crime and there would no longer even be such a category as that of general intent crimes.

*Id.* at 39, 643 A.2d at 464–65. Each crime must be reviewed on an *ad hoc* basis. *Id.* at 37–38, 643 A.2d at 464. Distilled to its essence, to determine whether a particular crime requires a necessary specific intent, "we must inquire whether, in addition to the general intent to do the immediate act, it embraces some additional purpose or design to be accomplished beyond that immediate act." *Id.,* 643 A.2d at 464.

Along these same lines, Judge Orth, writing for the Court in *McBurney v. State,* 280 Md. 21, 29, 371 A.2d 129, 133 (1977), observed:

> A general *mens rea* or intent 'includes those consequences which (a) represent the very purpose for which an act is done (regardless of likelihood of occurrence), or (b) are known to be substantially certain to result (regardless of desire).' [R. Perkins, Criminal Law (2 nd. ed.1969) at 747].
> In some crimes, however, a specific intent is an essential ingredient. Clark & Marshall, A Treatise on the Law of Crimes (7 th ed.1967) § 5.06. 'A specific intent, when an element of the *mens rea* of a particular offense, is some intent other than to do the *actus reus* thereof which is specifically required for guilt.' [Perkins at 762].

## IV.

 We have consistently stated that the cardinal rule in statutory construction is to effectuate the Legislature's broad goal or purpose. *Gargliano v. State,* 334 Md. 428, 435 639 A.2d 675, 678 (1994). The primary source of legislative intent is the text of the statute itself. *Rose v. Fox Pool Corp.,* 335 Md. 351, 359, 643 A.2d 906, 909 (1994). To determine if a criminal statute requires specific intent, we look first to the language of the statute. *See Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483, 485 (1992); *Shell,* 307 Md. at 69, 512 A.2d at 370 (stating that particular language and purpose of each statute must be considered). If the language alone does not provide sufficient information as to the Legislature's intent, we look to other sources to discern the Legislature's purpose. *See Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). In determining legislative intent,

> the key is the purpose of the legislation, determined in the light of the statute's language and context. '[W]e look at statutory language in context; we consider legislative history when it is available.... Our endeavor always is to construe a statute so as to implement the legislative goal, not to frustrate it.'

*Warfield v. State,* 315 Md. 474, 499, 554 A.2d 1238, 1251 (1989) (alteration in original) (citation omitted) (quoting *NCR Corp. v. Comptroller,* 313 Md. 118, 145–46, 544 A.2d 764, 777 (1988)).

 Viewing the statute as a whole, the language of the carjacking statute does not evidence an intent on the part of the General Assembly to create a specific intent crime. Words such as "with intent to" are conspicuously absent from the statute.[3] "When a statute does not contain any reference to intent, general intent is ordinarily implied." *United States v. Martinez,* 49 F.3d 1398, 1401 (9 th Cir.1995).

---

3. The General Assembly has created specific intent crimes, using explicit language to indicate the required specific intent. It is evident that when the Legislature desires to create a specific intent crime, it knows

The legislative history as well as the plain language of the statute make clear that the General Assembly intended to create a new criminal offense known as carjacking. *See* Senate Judicial Proceedings Committee, Floor Report for Senate Bill 339, at 1 (1993) ("This bill creates and defines the crimes of carjacking and armed carjacking."); *cf. Pixley v. United States*, 692 A.2d 438, 439 (D.C.1997) (carjacking is a new criminal offense). The Legislature created a new offense that does not require any additional deliberate or conscious purpose beyond that of obtaining unauthorized possession or control of a motor vehicle.

We look initially to the plain language of the statute. First, the Legislature clearly and unequivocally provided that any sentence imposed for carjacking may be separate from and consecutive to a sentence for any other offense arising from the conduct underlying the offenses of carjacking or armed carjacking. Art. 27, § 348A(d). Second, the Legislature clearly focused on specific intent when it explicitly provided that it is not a defense that the defendant did not intend to permanently deprive the owner of the motor vehicle, and failed to substitute an intent requirement. *See* Art. 27, § 348A(e). In eliminating the specific intent to permanently deprive, the Legislature could have included a different intent if it chose to do so. All that the statute requires is the intent to do the proscribed act; no further purpose or intent to achieve some additional consequence is necessary.

We turn next to the legislative history. In 1991, a new offense, coined "carjacking", was on the rise nationally. *See*

---

how to do so. *See, e.g.*, Burglary in first degree, Art. 27, § 29(a) (A person may not break and enter the dwelling of another with the intent to commit theft or a crime of violence); Burglary in second degree, Art. 27, § 30(a) (A person may not break and enter the storehouse of another with the intent to commit theft, a crime of violence, or arson in the second degree); Burglary in third degree, Art. 27, § 31 (A person may not break and enter the dwelling of another with the intent to commit any crime). These offenses are specific intent crimes. *Cf. Warfield v. State*, 315 Md. 474, 554 A.2d 1238 (1989) (examining the predecessors to these crimes and concluding that they were specific intent crimes).

G. Wing, *Putting the Brakes on Carjacking or Accelerating It? The Anti Car Theft Act of 1992,* 28 U. RICH L.REV. 385 (1994). In response, Congress passed the Anti Car Theft Act of 1992, and many state legislatures, sparked by the violent death of Dr. Pamela Basu in Howard County, Maryland, followed the federal lead and enacted legislation to address this new twist to car thefts. *See infra* statutes cited p. 611–12.

In response to the Basu carjacking, Senate Bill 339 and House Bill 415 were introduced in the Maryland General Assembly as emergency measures by Governor William Donald Schaefer in January, 1993. As emergency legislation, the Maryland General Assembly enacted Art. 27, § 348A, chapter 69, Acts of 1993, on April 26, 1993, effective upon enactment. *See* Bill File for House Bill 415 (1993); Bill File for Senate Bill 339 (1993) (reflecting that emergency legislation was necessary for the immediate preservation of the public health and safety). The intent of the Legislature "was to proscribe actions which although already crimes [4], i.e., robbery, were deemed to be of such an aggravated nature as to require specific legislation and punishment." *Price v. State,* 111 Md. App. 487, 497, 681 A.2d 1206, 1211 (1996). Testifying before the Senate Judicial Proceeding Committee on Senate Bill 339, Steven B. Larsen of the Governor's Legislative Office said:

> While the separate acts that constitute a carjacking technically fall within current chargeable offenses, the existing penalties are wholly inadequate for the gravity of the offense. This legislation provides prosecutors with additional tools needed to place carjackers behind bars, and sends a strong signal to carjackers that the penalties for carjacking are severe.

*See* Bill File for Senate Bill 339 (1993).

It is clear that the broad aim of the statute was to enhance the penalties applicable to individuals who use force or threat

---

4. These pre-existing crimes also include robbery with a dangerous and deadly weapon, theft, unauthorized use of a motor vehicle, and unlawful taking of a motor vehicle.

of force or intimidation to obtain possession or control of a motor vehicle [5] and to make it easier for prosecutors to obtain convictions for carjacking.[6] By looking at the statute as a

---

**5.** As originally introduced, Senate Bill 339 and House Bill 415 contained mandatory minimum sentencing provisions. After considerable debate, those provisions were deleted.

**6.** Other states have likewise concluded that their legislatures intended to make it easier, not more difficult, to obtain convictions for carjacking. In *People v. Davenport*, 230 Mich.App. 577, 583 N.W.2d 919, 921 (1998), the Court of Appeals of Michigan concluded, based on the legislative history of the Michigan carjacking statute, that, unlike with robbery or assault offenses, "the Legislature did not intend that carjacking prosecutions include the burden of proving specific intent." In particular, the court relied on the Senate Fiscal Agency Bill Analysis, SB 773, February 17, 1994, which read in part:

> The bill would make it easier for prosecutors to try carjackers and to show that an offender committed a felony. Robbery and assault offenses typically include elements of intent that can make it difficult to prosecute individuals on those charges. As a result, many of those initially charged with armed assault or robbery enter into plea bargain agreements and, consequently, are punished for less serious offenses.... Carjacking charges would more likely be tried on their merits rather than plea bargained, because the elements of the proposed offense would be easier to prove than those of robbery or assault.

*Id.*

The Court of Appeal, Fifth District, in California concluded that the California legislature created a new crime of carjacking, and not just a form of robbery. *People v. Medina*, 39 Cal.App.4th 643, 647–48, 46 Cal.Rptr.2d 112, 113–14 (1995). The court recounted the reason for the creation of the new crime as explained in the legislative history:

> [T]here has been considerable increase in the number of persons who have been abducted, many have been subjected to the violent taking of their automobile and some have had a gun used in the taking of the car.
>
> This relatively 'new' crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, it would be simpler to hot-wire the automobile without running the risk of confronting the driver. People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally, law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang members and the incidents are drastically increasing.
>
> Under current law there is no carjacking crime per se and many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car) since [many] of these gang carjackings are thrill seeking thefts. There is a need to prosecute this crime.

whole, including the enhanced penalties applicable to carjackers over and above those penalties for the underlying conduct, as well as the explicit rejection of the specific intent to permanently deprive, it is clear that the Legislature did not intend to require a specific intent to achieve some additional consequence beyond the immediate act of taking the vehicle.

Finally, we find no support in the nature of carjacking itself to indicate that it is a specific intent crime. Carjacking requires the general intent to commit the act of obtaining unauthorized possession or control of a motor vehicle from another individual in actual possession by force or violence, or by putting that individual in fear through intimidation or threat of force or violence. The temporary deprivation of the property is substantially certain to result, regardless of the desire of the actor. The General Assembly gave no indication that "the mind [of the perpetrator] be conscious of a more remote purpose or design which shall eventuate from the doing of the immediate act." *Shell*, 307 Md. at 62, 512 A.2d at 366 (quoting *Smith*, 41 Md.App. at 305, 398 A.2d at 442). We agree with the State that the Legislature's clear intent was that, without any additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result, the offense is committed. Simply stated, "[t]he mens rea . . . is implicit in the intentional doing of the act." *State v. Yanez*, 716 A.2d 759, 767 (R.I.1998).

 We hold that the intent element of carjacking is satisfied by proof that the defendant possessed the general criminal intent to commit the act, *i.e.*, general intent to obtain unauthorized possession or control from a person in actual possession by force, intimidation or threat of force. Thus, the trial court properly refused to instruct the jury on voluntary intoxication as requested by Appellant.

---

*Id.*, 46 Cal.Rptr.2d at 113–14 (quoting Assem. Com. on Pub. Safety, analysis of Sen. Bill No. 60 (1993–1994 Reg. Sess.) July 13, 1993, p. 1.) (second alteration in original).

## V.

Many of our sister states, as well as the federal government, have enacted carjacking statutes. *See* 18 U.S.C § 2119, ANTI CAR THEFT ACT OF 1992; CAL.PENAL CODE § 215 (West 1998 Supp.); D.C.CODE ANN. § 22–2903 (1996 & 1998 Supp.); DEL. CODE ANN. tit. 11, §§ 222(2), 604, 612, 613 (1995 & 1996 Supp.); FLA. STAT. ANN. ch. 812.133 (West 1994 & 1998 Supp.); IND. CODE ANN. § 35–42–5–2 (Michie 1994 & 1998 Supp.); LA.REV. STAT. ANN. § 14.64.2 (West 1997); MICH. COMP. LAWS § 750.529a (1998 Supp.); MISS.CODE ANN. §§ 97–3–113, –115, – 117 (1994 & 1998 Supp.); N.J. STAT. ANN. § 2C:15–2 (West 1995 & 1998 Supp.); S.C.CODE ANN. § 16–3–1075(B) (Law Co-op 1976 & 1997 Supp.); TENN.CODE ANN. § 39–13–404 (1997); VA.CODE ANN. § 18.2–58.1. (Michie 1996 & 1998 Supp.). Several states have also determined that statutory carjacking is a general intent crime. For example, in *People v. Davenport,* 230 Mich.App. 577, 583 N.W.2d 919 (1998), the Court of Appeals of Michigan considered whether the trial court erred in refusing to give a specific intent instruction where the defendant was charged with carjacking in violation of Michigan Compiled Laws § 750.529a.[7] The court held that the statute required only a *general* intent or *mens rea* and not a specific intent. *Id.* 583 N.W.2d at 920. Following a review of the legislative history, the court concluded:

[I]t seems clear that the Legislature purposely omitted any element of specific intent in the crime of carjacking in order to make it simpler to convict offenders. Reading a specific intent element into the statute would negate that objective.

---

7. The Michigan carjacking statute, Michigan Compiled Laws § 750.529a(1) (1998 Supp.), provides:

A person who by force or violence, or by threat of force or violence, or by putting in fear robs, steals, or takes a motor vehicle as defined in [M.C.L. § 750.412; M.S.A. § 28.644] from another person, in the presence of that person or the presence of a passenger or in the presence of any other person in lawful possession of the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment of life or for any term of years.

The clear language of the carjacking statute indicates that no intent is required beyond the intent to do the act itself, that is, using force, threats, or putting in fear in order to take a vehicle from a person in lawful possession and in that person's presence. As such, carjacking is a general intent crime.

*Id.* 583 N.W.2d at 921. Similarly, the Court of Appeals for the District of Columbia held that statutory carjacking is a general intent crime.[8] *Pixley v. United States,* 692 A.2d 438 (D.C.1997) (holding carjacking a general intent crime based on the statutory requirement that a person commit the act "knowingly or recklessly").

The federal carjacking statute, as initially enacted in 1992, contained no explicit intent requirement.[9] Under the federal statute, carjacking has been construed consistently as a general intent crime. *See, e.g., United States v. Payne,* 83 F.3d 346, 347 (10 th Cir.1996), *appeal from denial of habeas corpus dismissed,* 172 F.3d 880 (1999); *United States v. Martinez,* 49 F.3d 1398, 1401 (9 th Cir.1995), *cert. denied,* 516 U.S. 1065, 116 S.Ct. 749, 133 L.Ed.2d 696 (1996); *United States v. Oliver,* 60

---

**8.** The D.C. carjacking statute, D.C.Code § 22–2903(a)(1) & (2)(b)(1) (1996), reads:

A person commits the offense of carjacking if, by any means, that person knowingly or recklessly by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, or attempts to do so, shall take from another person immediate actual possession of a person's motor vehicle.

**9.** The original federal carjacking statute, 18 U.S.C. § 2119, ANTI CAR THEFT ACT OF 1992, read:

Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury as defined in section 1365 of this title results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

F.3d 547, 551 (9th Cir.1995); *United States v. Harris,* 25 F.3d 1275, 1279–80 (5th Cir.1994), *cert. denied,* 513 U.S. 978, 115 S.Ct. 458, 130 L.Ed.2d 366 (1994). The statute was amended, and the present version, incorporating the 1994 amendments, requires the "intent to cause death or serious bodily harm." [10] The intent phrase was substituted for the "possessing a firearm" language. *See* Violent Crime Control and Law Enforcement Act of 1994, § 60003(a)(14), Pub.L. No 103–322, 108 Stat. 1796, 1970. This new language has been interpreted to render § 2119 a specific intent crime. *See, e.g., United States v. Randolph,* 93 F.3d 656, 661 (9th Cir.1996) (concluding that the new intent element converted carjacking from a general intent crime to a specific intent offense), *abrogated on other grounds, Holloway v. United States,* —— U.S. ——, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999); *United States v. Rivera–Gomez,* 67 F.3d 993, 996 n. 1 (1st Cir.1995).[11]

---

**10.** 18 U.S.C. § 2119, as amended by Pub.L. 103–322, § 60003(a)(14) (1994), reads:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
> (1) be fined under this title or imprisoned not more than 15 years, or both,
> (2) if serious bodily injury as defined in section 1365 of this title results, be fined under this title or imprisoned not more than 25 years, or both, and
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

**11.** The Supreme Court recently interpreted another aspect of the intent requirement of U.S.C. § 2119. In *Holloway v. United States,* —— U.S. ——, ——, 119 S.Ct. 966, 968, 143 L.Ed.2d 1 (1999), the Court considered whether the phrase "with the intent to cause death or serious bodily harm" requires the Government to prove "that the defendant had an unconditional intent to kill or harm in all events, or whether it merely requires proof of an intent to kill or harm if necessary to effect a carjacking." The Court held that "[t]he intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if neces-

## VI.

We reject Appellant's contention that carjacking is little more than aggravated robbery without the need to prove specific intent to permanently deprive. His argument that carjacking is simply another type of robbery or unauthorized use of vehicle lacks merit. Carjacking is not a necessarily included offense of robbery, or vice versa. Maryland applies an "elements test" to determine whether one offense is a lesser included offense of another—this test asks whether all of the elements of the lesser offense must be included in the greater offense. *See State v. Bowers*, 349 Md. 710, 722, 709 A.2d 1255, 1260 (1998).

The elements of carjacking differ from the elements of robbery and each offense can be committed without committing the other offense. Robbery is the felonious taking and carrying away of personal property from the person of another, accomplished by force or fear. *State v. Gover*, 267 Md. 602, 606, 298 A.2d 378, 380–81 (1973). Robbery requires asportation of the property. *Ball v. State*, 347 Md. 156, 184, 699 A.2d 1170, 1183 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 866, 139 L.Ed.2d 763 (1998). Although reference to the intent requirement begs the question before the Court, we note that robbery is a specific intent crime, and that the specific intent required is the intent to permanently deprive the person of the property. *Gover*, 267 Md. at 606, 298 A.2d at 381. Carjacking requires that (1) the defendant obtain unauthorized possession or control of a motor vehicle; (2) that the motor vehicle was in the actual possession of another person at that time; and (3) that the defendant used force or violence against that person, or put that person in fear through intimidation or threat of force or violence, in order to obtain the motor vehicle. Maryland Criminal Pattern Jury Instruction MPJI 4:28A: Carjacking. An essential element of carjacking, unlike robbery, is the taking of a specific type of

---

sary to steal the car (or, alternatively, if unnecessary to steal the car)." *Id.* —— U.S. at ——, 119 S.Ct. at 972.

property, *i.e.* a motor vehicle. Unlike robbery, the carjacking statute requires no movement or asportation, only unauthorized possession or control.[12] Simply put, robbery can be accomplished without committing carjacking, and carjacking can be accomplished without committing robbery. *Cf. People v. Parker*, 230 Mich.App. 337, 584 N.W.2d 336, 340 (1998);

---

**12.** As support for finding a specific intent requirement, the dissent reads an asportation aspect into the statute where none exists. Dissenting op. at 624. In the dissent's view:

> It is inconceivable that, having gone so far as to accost the victim for the purpose of taking his or her car and having to take control of it to complete the crime or realize the goal, a defendant would not, or even that a legislature would contemplate the possibility that he or she would not, move the car. Moreover, why would anyone who had even a general intent to take a car, order a person out of the car and then not move it? The absurdity of this example supports a common sense reading of the carjacking statute as creating a specific intent offense.

Contrary to the dissent's assertions, it is not absurd to believe that the Legislature intended that the perpetrator need not actually move the car to be guilty of carjacking. Although it may be slight, asportation is a required element of other offenses. *See* Art. 27 § 337 (kidnapping); *Beard v. State*, 42 Md.App. 276, 281 n. 1, 399 A.2d 1383, 1386 n. 1 (1979) (robbery). Without some movement, these offenses simply are not committed. *See Beard*, 42 Md.App. at 281 n. 1, 399 A.2d at 1386 n. 1. This is not true of carjacking. Asportation is not a required element under the carjacking statute.

It is not "inconceivable," as the dissent suggests, that a legislature would contemplate the possibility that the perpetrator would not move the car. The Legislature consciously chose to use the language "obtains unauthorized possession or control" instead of language that would have added an asportation element to the statute. Omitting an asportation requirement does expand the scope of criminal conduct encompassed by the carjacking statute. Several examples illustrate this point. Take, for example, a perpetrator who approaches an open driver's window, displays a knife, grabs a driver, and orders him out of the car. As the driver leaves the vehicle, he hits an ignition "kill" switch hidden under the dash with his knee, and the perpetrator is unable to move the motor vehicle. One can readily imagine other scenarios involving anti-theft devices, or cases where the perpetrator has difficulty operating the vehicle. Another scenario that might arise is where a perpetrator ejects a person by force and gains control over the car, but the victim, or bystanders who witnessed the events, intercede and prevent the person from driving away. The dissent's criticism that the perpetrator would not *choose* to move the car after gaining control over it fails to take into account those circumstances where an asportation requirement, or lack thereof, could be the dispositive factor in conviction.

*Pixley v. United States,* 692 A.2d 438, 440 (D.C.1997); *People v. Green,* 58 Cal.Rptr.2d 259, 263, 50 Cal.App.4th 1076, 1084 (Cal.Ct.App.1996).

■ We also reject Appellant's argument that carjacking is the equivalent of an unauthorized use preceded by an assault, battery, or an aggravated assault. Art. 27, § 349. Unauthorized use of vehicle, like robbery, requires that the vehicle be taken and carried away. *See Shope v. State,* 18 Md.App. 472, 476, 307 A.2d 730, 733 (1973). Actual movement of the vehicle, however slight, is required. Otherwise said, asportation is required. As we have pointed out, not so for carjacking. Carjacking also requires force, violence, intimidation, or threat of force or violence. Hence, each offense can be accomplished without committing the other offense.[13] *Cf. Allen v. United States,* 697 A.2d 1, 2 (D.C.1997).

■ In sum, there is nothing in the language of the statute, the legislative history, or the nature of the crime itself to suggest that the Legislature intended to make carjacking a specific intent crime. Because carjacking is not a specific intent crime, voluntary intoxication is not a defense. The trial court properly refused to give an instruction that voluntary intoxication may negate the intent element of carjacking.

---

**13.** In support of its statement that under the unauthorized use statute, "[t]here is no requirement that the state prove the exact duration of the intended deprivation," the dissent quotes from Judge Moylan's opinion for the Court of Special Appeals in *In Re Lakeysha P.,* 106 Md.App. 401, 425, 665 A.2d 264, 275 (1995), *cert. granted,* 341 Md. 522, 671 A.2d 500, *cert. dismissed as improvidently granted,* 343 Md. 627, 684 A.2d 5 (1996). Dissenting op. at 626–27 n. 16. Judge Moylan posited in that case that the unauthorized use statute does not contain an affirmative element of an intent to deprive temporarily. *Id.* at 424, 665 A.2d at 275. In support of that position, he described a variety of scenarios "in which the mens rea of the culprit might somehow be in question." *Id.* at 425, 665 A.2d at 275. It is those scenarios that the dissent quotes to support its statement that the state need not prove the exact duration of the intended deprivation. Judge Moylan offered these scenarios only to prove his point that the statute *lacked* an affirmative intent requirement, not as support for the proposition that the state need not "prove the exact duration of the intended deprivation."

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*

Dissenting opinion by BELL, C.J., in which ELDRIDGE and CHASANOW, JJ., join.

BELL, Chief Judge, dissenting:

The majority holds that the offense of carjacking, see Maryland Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.) Article 27 § 348A,[1] is not a specific intent crime. I do not agree and, so, dissent.

Carjacking is nothing more than a "particular type of robbery," *Holloway v. United States*, —— U.S. ——, ——, 119 S.Ct. 966, 971–72, 143 L.Ed.2d 1 (1999), one in which the thing taken is an automobile. *See also Price v. State*, 111 Md.App. 487, 497, 681 A.2d 1206, 1210–11 (1996), in which the Court of Special Appeals stated, "[t]he intent of the legislature [in enacting the carjacking statute] was to proscribe actions which although already crimes, *i.e.* robbery, were deemed to be of

---

**1.** Maryland Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.) Article 27 § 348A provides:

"(a) In this section, "motor vehicle" has the meaning stated in § 11–135 of the Transportation Article.

"(b) (1) An individual commits the offense of carjacking when the individual obtains unauthorized possession or control of a motor vehicle from another individual in actual possession by force or violence, or by putting that individual in fear through intimidation or threat of force or violence.

"(2) An individual commits the offense of armed carjacking when the individual employs or displays a deadly or dangerous weapon during the commission of a carjacking.

"(c) An individual convicted of carjacking or armed carjacking is guilty of a felony and shall be sentenced to imprisonment for not more than 30 years.

"(d) The sentence imposed under this section may be imposed separate from and consecutive to a sentence for any other offense arising from the conduct underlying the offenses of carjacking or armed carjacking.

"(e) It is not a defense to the offense of carjacking or armed carjacking that the defendant did not intend to permanently deprive the owner of the motor vehicle."

such an aggravated nature as to require specific legislation and punishment" and, thus, carjacking "is little more than robbery without the need to prove specific intent to permanently deprive the owner of his property." That is, in truth, also all that the legislative history shows.

The carjacking statute was enacted as a result of the public's outrage over the brutal murder of a Howard County woman, Dr. Pamela Basu, who was dragged two miles to her death, during a carjacking.[2] In addition to the outcry from the public and despite the recognition that the act of carjacking could be charged under already existing statutes, a fact specifically and clearly communicated to the General Assembly, *see, e.g.,* Testimony of Steven B. Larsen, Governor's Legislative Office, "Carjacking," HB 415 and SB 339 (1993), "[w]hile the separate acts that constitute a carjacking fall within current chargeable offenses, the existing penalties are wholly inadequate for the gravity of the offense," *id.,* the Governor urged the General Assembly to create a separate statutory offense for the act of robbery in which an automobile in a person's possession is taken. The Legislature quickly debated and enacted the carjacking statute as an emergency measure.

From the legislative history, it is clear that the purpose of the enactment of the carjacking statute was to provide additional penalties than those already available in order to "send a strong signal to carjackers that the penalties for carjacking are severe." *Id.* It was also to "provide[ ] prosecutors with

---

**2.** *See 'Together', Schaefer Tells Legislators ...,* Balt. Sun, January, 15, 1993 at 14A; Michael James, *Carjack Patterns Emerging; State Police Suggest Common–Sense Steps,* Balt. Sun, December 23, 1992 at 1B.; *The Intrepid Commuter; Carjacking is Commuters Big Worry,* Balt. Sun, September 21, 1992 at 1B; Jackie Powder, *Residents at Community Meeting Seek Death Penalty in Carjacking,* Balt. Sun, September 20, 1992 at 2; Jackie Powder, *Carjack Death Leaves 'Void and Emptiness'* Balt. Sun, September 17, 1992 at 1B; Andrew Brownstein and Michael York, *Calling Carjacking Terrorism, Area Officials Coordinate Attack,* Wash. Post, September 17, 1992 at D1; Mary Corey, *Carjackings Give Md. Drivers a New Passenger: Fear,* Balt. Sun, September 16, 1992 at 1A; Debbi Wilgoren, *Carjackers Put Drivers on Defensive,* Wash. Post, August 18, 1992 at A1.

additional tools needed to place carjackers behind bars." *Id.*
As introduced, the bill contained a provision that mandated a
mandatory minimum sentence.[3] Though the bill was eventual-
ly amended to delete this provision, debate over it dominated
the deliberations. *See generally,* Bill Files for House Bill 415
and Senate Bill 339. As enacted, *see* 1993 Laws of Maryland,
ch. 69, § 1, the statute prescribed a penalty for carjacking of
up to 30 years. Maryland Code (1957, 1996 Repl.Vol., 1997
Cum.Supp.) Art. 27 § 348A (c).[4] This is a greater penalty
than that of the already existing similar offenses—theft, rob-
bery and armed robbery.[5] In addition, the statute made
carjacking an aggravating circumstance for the purpose of the
death penalty sentencing procedure. § 413(d)(10).[6] Further,
the statutes classifying "crimes of violence," *see* § 441(e)[7],

---

3. As proposed, § (c) provided:
 "(c) (1) An individual convicted of carjacking is guilty of a felony and
 shall be sentenced to imprisonment for not less than fifteen years and
 not more than 30 years.
 "(2) For an individual convicted of armed carjacking, it is manda-
 tory upon the Court to impose not less than the minimum sentence
 of 15 years, no part of which may be suspended, and the person
 may not be eligible for parole in less than 15 years except in
 accordance with the provisions of Article 31B, § 11 of the Code."
 *See* Senate Bill 339.

4. Unless otherwise indicated, all future references will be to Maryland
 Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.) Art. 27.

5. Felony theft is punishable by up to 15 years. § 342(f)(1). Robbery is
 punishable by up to 15 years. § 486. Armed robbery is punishable by
 up to 20 years. § 486.

6. Section 413(d)(10) provides:
 "(d) In determining the sentence, the court or jury, as the case may
 be, shall first consider whether, beyond a reasonable doubt, any of
 the following aggravating circumstances exist:
 * * *
 "(10) The defendant committed the murder while committing or
 attempting to commit a carjacking, armed carjacking, robbery
 arson, rape or sexual offense in the first degree."

7. Section 441(e) provides:
 "The term 'crime of violence' means abduction; arson; burglary;
 including common-law and all statutory and storehouse forms of
 burglary offenses; escape; housebreaking; kidnapping; manslaugh-

§ 643(B)(a) [8] and Maryland Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.) Art. 41 § 4–501(12)(XII),[9] were amended to include carjacking and armed carjacking.

To be sure, the General Assembly did address, to some extent, the intent element of carjacking; by providing that proof of an intent permanently to deprive the owner of the

<hr>

ter; excepting involuntary manslaughter; mayhem; murder; rape; robbery; robbery with a deadly weapon; carjacking or armed carjacking; sexual offense in the first degree; and sodomy; or an attempt to commit any of the aforesaid offenses; or assault with intent to commit any other offense punishable for imprisonment for more than one year."

8. Section 643B (a) provides:
 "As used in this section, the term "crime of violence" means abduction; arson in the first degree; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming, as previously proscribed under §§ 384, 385, and 386 of this article; murder; rape; robbery; robbery with a deadly weapon; carjacking or armed carjacking; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault in the first degree; and assault with intent to murder, assault with intent to rape, assault with intent to rob, assault with intent to commit a sexual offense in the first degree, and assault with intent to commit a sexual offense in the second degree."
 By being included under this section, carjacking and armed carjacking were made subject to the mandatory sentences prescribed by this section.

9. Under this section:
 " "Violent crime" means the commission or attempt to commit any of the following offenses:
 "(i) Abduction;
 "(ii) Arson;
 "(iii) Burglary, including any common law or statutory form;
 "(iv) Escape;
 "(v) Housebreaking;
 "(vi) Kidnapping;
 "(vii) Manslaughter other than involuntary manslaughter;
 "(viii) Mayhem;
 "(ix) Murder;
 "(x) Rape;
 "(xi) Robbery, including robbery with a deadly weapon;
 "(xii) Carjacking or Armed Carjacking;
 "(xiii) Assault with intent to commit any of these crimes; or
 "(xiv) Use of a handgun or other deadly weapon in the commission or attempt to commit any crime."

vehicle is not a defense to carjacking, § 348A (e), the Legislature did not define carjacking to be the identical offense as robbery or theft. That is the only indication of the Legislature's awareness of the intent issue. As we have seen, by contrast, the Legislature spent a considerable amount of time debating the proper penalty and collateral impact of enacting a carjacking statute.

But negating the intent permanently to deprive as a defense does not equate to eliminating altogether the requirement to prove the specific intent to deprive the owner temporarily of the vehicle. In point of fact, the opposite would appear to be the case—by specifying the specific intent that is not a defense, the Legislature inferentially recognized that another, lesser specific intent may be a defense. The fact that the Legislature specifically noted that the State was not required to prove intent to deprive *permanently* implies that some proof of intent to deprive, even if the intended deprivation is temporary, is necessary. Had the Legislature intended to relieve the State of the burden of proving intent to deprive for any period of time, it could have, and I submit would have, refrained from using the qualifying word, "permanently," in subsection (e). To interpret the statute, on that basis, as not requiring proof of any specific intent to deprive, would render the word "permanently" superfluous. It is well settled that, "absent a clear intent to the contrary, a statute is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Montgomery County v. Buckman,* 333 Md. 516, 523–24, 636 A.2d 448, 452 (1994). *See Hyle v. Motor Vehicle Admin.,* 348 Md. 143, 149, 702 A.2d 760, 763 (1997); *Blondell v. Baltimore Police,* 341 Md. 680, 691, 672 A.2d 639, 645 (1996); *Warsame v. State,* 338 Md. 513, 519, 659 A.2d 1271, 1273 (1995).

In any event, subsection (e) is at best ambiguous; it certainly is not clear and unambiguous. When dealing with a criminal statute that is ambiguous, the Rule of Lenity applies, entitling the defendant to the benefit of the ambiguity. *See Gardner v. State,* 344 Md. 642, 651, 689 A.2d 610, 614 (1997), in which this Court stated: "Lenity expressly prohibits a court

from interpreting a criminal statute to increase the penalty it places on a defendant 'when such an interpretation can be based on no more than a guess as to what [the Legislature] intended,'" quoting *Monoker v. State*, 321 Md. 214, 222, 582 A.2d 525, 529 (1990), which in turn quotes *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199, 205 (1958).

The majority cites a number of federal cases interpreting the federal carjacking statute, as originally enacted in 1992 [10], to support its conclusion that the Maryland statute prescribes a general intent crime. *See, e.g., United States v. Payne*, 83 F.3d 346, 347 (10 th Cir.1996); *United States v. Martinez*, 49 F.3d 1398, 1401 (9 th Cir.1995), *cert. denied*, 516 U.S. 1065, 116 S.Ct. 749, 133 L.Ed.2d 696 (1996); *United States v. Oliver*, 60 F.3d 547, 551 (9th Cir.1995); *United States v. Harris*, 25 F.3d 1275, 1279–80 (5th Cir.1994), *cert.denied*, 513 U.S. 978, 115 S.Ct. 458, 130 L.Ed.2d 366 (1994). These cases, as I will explain, actually support my position.

*Martinez* provides insight into why the courts interpreted the federal carjacking statute as a general intent crime. There, the 9 th Circuit pointed out that the structure, language,

---

**10.** The federal carjacking statute as originally enacted in 1992, read:
"Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped or received in interstate or foreign commerce from the person or presence of another by force or violence or intimidation, or attempts to do so, shall—
"(1) be fined under this title or imprisoned not more than 15 years, or both,
"(2) if serious bodily injury as defined in section 1365 of this title results, be fined under this title or imprisoned not more than 25 years or both, and
"(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both."
18 U.S.C. § 2119, Anti Car Theft Act of 1992.
In 1994, the statute was amended and the "possessing a firearm" language was replaced with "with the intent to cause death or bodily harm". *See* Violent Crime Control and Law Enforcement Act of 1994 § 60003(a)(14), Pub.L. 103–322. Subsequent decisions have interpreted the new statute as changing carjacking to a specific intent crime. *United States v. Randolph*, 93 F.3d 656, 660 (9 th Cir.1996): *United States v. Rivera–Gomez*, 67 F.3d 993, 996 n. 1 (1 st Cir.1995).

and legislative history of the carjacking statute indicated that the offense of carjacking was analogous to robbery. *See Martinez*, 49 F.3d at 1401. It referenced H.R.Rep. No. 102—851(I), 102 nd Cong., 2d Sess. 13–17, *reprinted in* 1992 U.S.C.C.A.N. 2829, 2833, a House of Representatives Judiciary Committee Report which stated that "the definition of [carjacking] tracks the language used in other federal robbery statutes." The court then stated, "[w]e see no reason to distinguish between the bank robbery and carjacking statutes with respect to intent." *Id.* It is significant that Federal bank robbery is a general intent offense. *See United States v. Darby*, 857 F.2d 623, 626 (9 th Cir.1988) (citing *United States v. Hartfield*, 513 F.2d 254 (9 th Cir.1975)). The court reasoned that since robbery, under federal law, is a general intent offense, it follows that carjacking should be as well.

In Maryland, robbery is a common law offense, *Jupiter v. State*, 328 Md. 635, 643, 616 A.2d 412, 416 (1992); *West v. State*, 312 Md. 197, 202, 539 A.2d 231, 233 (1988), requiring proof of a specific intent to steal. *Jupiter*, 328 Md. at 639, 616 A.2d at 414. If that rationale were applied in the instant case, it would follow that, since robbery under Maryland law is a specific intent offense and the carjacking statute negates only the intent permanently to deprive, carjacking requires proof of specific intent as well.

Also cited by the majority in support of its position is a recent Michigan Court of Appeals decision, *People v. Davenport*, 230 Mich.App. 577, 583 N.W.2d 919 (1998). In that case, the court construed the Michigan carjacking statute as requiring proof of only general intent.[11] In stark contrast to the legislative history of Maryland's carjacking statute, the legisla-

---

**11.** The Michigan carjacking statute, Michigan Compiled Laws § 750.529(a)(1)(1998 Supp.) provides:

"A person who by force or violence, or by threat of force or violence, or by putting in fear robs, steals, or takes a motor vehicle[ ] from another person, in the presence of that person or the presence of a passenger or in the presence of any other person in lawful possession of the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment of life or for any term of years."

tive history of the Michigan carjacking statute confirms that construction. A review of that legislative history reveals that the Michigan Legislature intended, by enactment of the carjacking statute, to make it easier for a prosecutor to obtain a carjacking conviction; the bill analysis leaves no doubt that the Legislature, by passing that act, intended to lower the State's burden of proof.[12] Thus, it had an entirely different intent than did the Maryland Legislature. The Michigan Court of Appeals concluded, "it seems clear that the Legislature purposely omitted any element of specific intent in the crime of carjacking in order to make it simpler to convict offenders. Reading a specific intent element into the statute would negate that objective." 230 Mich.App. 577, 583 N.W.2d 919, 921.

Neither is the majority's reliance upon *Pixley v. United States*, 692 A.2d 438 (D.C.App.1997) persuasive. *Pixley* is easily distinguishable from the instant case because the language of the District of Columbia carjacking statute explicitly and specifically contains an intent requirement.[13] As the District of Columbia Court of Appeals pointed out, "carjacking requires only that the taking be performed 'recklessly'[therefore][a]n utterly heedless [perhaps alcohol induced] mistaken

---

**12.** The portion of the bill analysis reads:

"The bill would make it easier for prosecutors to try carjackers and to show that an offender committed a felony. Robbery and assault offenses typically include elements of intent that can make it difficult to prosecute individuals on those charges. As a result, many of those initially charged with armed assault or robbery enter into plea bargain agreements and, consequently, are punished for less serious offenses ... Carjacking charges would more likely be tried on their merits rather than plea bargained, because the elements of the proposed offense would be easier to prove than those of robbery or assault."

Senate Fiscal Agency Bill Analysis, SB 773, February 17, 1994.

**13.** The District of Columbia carjacking statute, § 22–2903(a)(1), reads:

"A person commits the act of carjacking if, by any means, that person *knowingly or recklessly* by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, or attempts to do so, shall take from another person immediate actual possession of a person's motor vehicle." (emphasis added)

belief in ownership accompanying a forcible demand for possession would thus satisfy the statute." *Id.* at 440. Unlike the instant case, the statute, in *Pixley,* is not ambiguous.[14]

When looking at the carjacking statute's intent and penalty element, together with those crimes related to carjacking, the majority's interpretation of the intent requirement produces an anomalous result. Unauthorized use of an automobile is a specific intent offense. Under the statute, in order to be convicted of unauthorized use of an automobile, the State is required to prove that the car was taken with the specific intent to deprive the owner of the automobile, although not permanently. *See In Re Lakeysha P.* 106 Md.App. 401, 425, 665 A.2d 264, 275 (1995), *cert. granted,* 341 Md. 522, 671 A.2d 500, *dismissed as improvidently granted,* 343 Md. 627, 684 A.2d 5 (1996).[15] Unauthorized use carries a minimum penalty of six months and a maximum penalty of four years.

---

**14.** The majority's assertion that "[u]nlike robbery, the carjacking statute requires no movement or asportation, only unauthorized possession or control .... [therefore] carjacking can be accomplished without committing robbery," Maj. op. at 615 stretches the definition of carjacking beyond all reasonable limits. *Pixley v. United States,* 692 A.2d 438, 440 (D.C.App.1997), upon which the majority relies, states that a carjacking without robbery "can be committed by putting a gun to the head of a person, and ordering him out of the car." Under our theft statute, this would not be sufficient, in my view, to obtain control over the car; it certainly suffices to obtain control over the person, but that is not the test. Something more must be required, at the very least getting behind the wheel of the car. It is inconceivable that, having gone so far as to accost the victim for the purpose of taking his or her car and having to take control of it to complete the crime or realize the goal, a defendant would not, or even that a legislature would contemplate the possibility that he or she would not, move the car. Moreover, why would anyone who had even a general intent to take a car, order a person out of the car and then not move it? The absurdity of this example supports a common sense reading of the carjacking statute as creating a specific intent offense.

**15.** There is no requirement that the state prove the exact duration of the intended deprivation. As Judge Moylan, speaking for the Court of Special Appeals put it:

"It follows that, when the Legislature enacted the Unauthorized Use law, it simply eliminated the *animus furandi* of larceny so that it could handle not only one but a number of circumstances in which

Theft, as defined in Art. 27, § 342, may be committed in several different ways. *See Cicoria v. State,* 332 Md. 21, 30, 629 A.2d 742, 746 (1993)("The theft statute prescribes five ways in which the crime of theft can be committed.") However it is committed, it is a specific intent crime. § 341; *See Jones v. State,* 303 Md. 323, 493 A.2d 1062 (1985); *Brown v. State,* 236 Md. 505, 204 A.2d 532 (1964); *Fletcher v. State,* 231 Md. 190, 189 A.2d 641 (1963); *Putinski v. State,* 223 Md. 1, 161 A.2d 117 (1960). A person convicted of theft where the value of the goods or services is under $300.00, may be imprisoned for up to 18 months, § 342(f)(2), while if the conviction is for felony theft, where the value of the property or services is greater than $300, he or she may be imprisoned for up to 15 years. § 342(f)(1).

The crime of theft, coupled with the use of violence or intimidation, creates the offense of robbery. Once again, for conviction, the State is required to prove that the defendant had a specific intent, the intent to steal. *State v. Gover,* 267 Md. 602, 606, 298 A.2d 378, 381 (1973). A person convicted of robbery may be sentenced to imprisonment for up to fifteen years. § 486. A person convicted of armed robbery may be sentenced to imprisonment for up to twenty years. § 488.

Carjacking obviously has been deemed by the Legislature to be the most serious of the offenses. Accordingly and logically, it is punishable by up to 30 years. Under the majority's interpretation, however, the state is required only to prove general intent, without the Legislature clearly evidencing its intention that it be so; it is also much easier to prove.[16]

the mens rea of the culprit might somehow be in question: 1) the situation in which it is clearly established that the intended deprivation was only temporary, 2) the situation in which the intended deprivation was probably permanent but where there is a failure to carry the burden of persuasion in that regard, 3) the situation in which the fact finder is actually persuaded that the intended deprivation was still of uncertain and undetermined duration in the mind of the culprit, and 4) the situation in which there was simply no evidence at all bearing on the duration of the intended deprivation."
*In Re Lakeysha P.,* 106 Md.App. 401, 425, 665 A.2d 264, 275 (1995).

16. I am, of course, aware that the proof of the offense of carjacking and the related offenses will be circumstantial, consisting of proving the

This statutory scheme evidences that the majority's decision produces an anomalous result. A defendant prosecuted for unauthorized use, theft, or robbery faces a less severe punishment than a defendant charged with carjacking and, in those cases, the State must prove, in addition to the act itself, the intent with which the defendant acted, *i.e.* to deprive the owner of the property either temporarily or permanently. The result of the majority's decision is to require the prosecutor to prove less even though the potential punishment and other consequences are greater, when there is no clear intent expressed by the Legislature that it desired that result. This result is fundamentally unfair, defies logic and common sense, and is violative of the Rule of Lenity. Since we have adopted the principle that "unreasonableness of the result produced by one among alternative possible interpretations of the statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result," *D&Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179–80, (quoting 2 A *Sutherland Statutory Construction,* § 45.12 (4th Ed.1984)), carjacking should be interpreted as requiring proof of the specific intent, at least temporarily, to deprive the owner of the car.

Judges ELDRIDGE and CHASONOW share the views expressed herein.

circumstances rather than the offer of direct evidence of how long the defendant intended to keep the car. The difference is more than semantics, however. If the State's burden is to prove a specific intent, the defendant would be entitled to a jury instruction to that effect.